Appeal No. 25-3149

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

**TERRI E. BAKER,**
Plaintiff-Appellant,

vs.

**RANDALL WATSON,** *et al.,*
Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
THE HONORABLE TOBY CROUSE, JUDGE
DISTRICT COURT CASE NO. 5:23-CV-04022-TC

---

## BRIEF OF APPELLEE MARK SCHMIDT IN HIS OFFICIAL CAPACITY
## FOR BLUE VALLEY U.S.D. 229

### Oral Argument Not Requested

W. Joseph Hatley        KS #12929
Stephanie Lovett-Bowman    KS #24842
Angus W. Dwyer        KS #26995

Spencer Fane LLP
1000 Walnut Street, Suite 1400
Kansas City, MO  64106
(816) 474-8100 Telephone
(816) 474-3216 Fax

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITES ..................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ...........................1

CORPORATE DISCLOSURE .........................................................1

STATEMENT OF PRIOR OR RELATED APPEALS ......................1

STATEMENT OF THE ISSUES.......................................................1

STATEMENT OF THE CASE ..........................................................2

STANDARD OF REVIEW ...............................................................7

SUMMARY OF THE ARGUMENT .................................................8

ARGUMENT ....................................................................................9

I.       Introduction...........................................................................9

II.      Baker has failed to preserve any arguments for appeal. .........11

    1.       Because Baker failed to comply with Tenth Circuit Rule 28.1, the Court can presume that she failed to preserve her arguments.......................................................12

    2.       Baker did not in fact preserve many of the arguments she presents on appeal. ..........................................................13

    3.       Arguments not addressed in Baker's Argument section are not properly preserved on appeal. ......................................15

III.     The district court properly concluded that Baker lacks standing..........17

    1.       Subject-matter jurisdiction requires Baker to establish standing. ..............................................................................17

    2.       The district court held Baker lacks standing to pursue any of her claims against BV because she did not suffer an injury in fact........................................................................19

    3.       The evidentiary record establishes Baker has not sustained an injury in fact to support her Free Exercise and Equal Protection claims. .............................................................20

    4.       Baker also failed to establish causation and redressability, further dooming her claim to standing. ............................24

5.     Baker's arguments merely reinforce that she has a generalized grievance. ..................................................26

IV.    If the Court finds Baker has standing, it should remand for further proceedings on the merits of Baker's substantive claims...........31

V.     The Kansas framework does not violate Equal Protection. ...................32

VI.    Neither BV's policies nor the underlying Kansas framework unconstitutionally interferes with parental choices. ...................34

VII.   The Kansas framework does not impose unconstitutional conditions. ..................................................................38

VIII.  BV is not hostile to religion. .......................................................41

IX.    Strict scrutiny does not apply to Baker's claims. ...................44

X.     Baker's facial challenge fails. .......................................................48

XI.    IDEA does not require the services Baker demands...........................49

CONCLUSION.........................................................................................51

CERTIFICATE OF COMPLIANCE..................................................53

CERTIFICATE OF DIGITAL SUBMISSION ...................................54

CERTIFICATE OF SERVICE .............................................................55

ADDENDUM ...........................................................................................56

Doc. 109, Memorandum and Order, 6/25/2024........... Blue Valley Addendum-1

# TABLE OF AUTHORITES

**Page(s)**

## Cases

*Baker v. Blue Valley Sch. Bd.*,
  543 P.3d 1179 (unpublished), 2024 WL 740443 (Kan. Ct. App.
  Feb. 23, 2024) ...........................................................................26, 34, 49

*Baker v. USD 229 Blue Valley*,
  979 F.3d 866 (10th Cir. 2020) .....................................................1, 24

*Bauchman for Bauchman v. West High Sch.*,
  132 F.3d 542 ...............................................................................46, 47

*Berger v. Rensselaer Cent. Sch. Corp.*,
  982 F.2d 1160 (7th Cir. 1993) ...........................................................46

*Bond v. United States*,
  564 U.S. 211 (2011)............................................................................32

*Bowen v. Roy*,
  476 U.S. 693 (1986)............................................................................46

*Bronson v. Swensen*,
  500 F.3d 1099 (10th Cir. 2007) ...................................................15, 16

*Carson v. Makin*,
  596 U.S. 767 (2022)..........................................................27, 36, 39, 40

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993)............................................................................45

*City of Hugo v. Nichols (Two Cases)*,
  656 F.3d 1251 (10th Cir. 2011) .........................................................25

*Coalition for Equal Rights, Inc. v. Ritter*,
  517 F.3d 1195 (10th Cir. 2008) .........................................................44

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)............................................................................17

*Espinoza v. Montana Dep't of Revenue*,
591 U.S. 464 (2020)....................................................................36, 40

*Exum v. U.S. Olympic Committee*,
389 F.3d 1130 (10th Cir. 2004) ............................................16, 48, 50

*First W. Cap. Mgmt. Co. v. Melamed*,
874 F.3d 1136 (10th Cir. 2017) .......................................................11

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024).............................................................17, 18, 19

*Ford v. Seabold*,
841 F.2d 677 (6th Cir. 1988) ...........................................................23

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)..........................................................................45

*Greenwood v. Wissahickon Sch. Dist.*,
571 F.Supp.2d 654 (E.D. Pa.2008)...................................................29

*Griffith v. El Paso Cnty., Colo.*,
129 F.4th 790 (2025) ........................................................................15

*Habecker v. Town of Estes Park, Colo.*,
518 F.3d 1217 (10th Cir. 2008) .......................................................24

*Hamilton v. City of New York*,
563 F. Supp. 3d 42 (E.D.N.Y. 2021) ...............................................47

*Herdahl v. Pontotoc Cnty. Sch. Dist.*,
933 F. Supp. 582 (N.D. Miss. 1996).................................................46

*Hilton v. City of Wheeling*,
209 F.3d 1005 (7th Cir. 2000) .........................................................36

*Hobby Lobby Stores, Inc. v. Sebelius*,
723 F.3d 1114 (10th Cir. 2013) .......................................................20

*Johnson ex rel. Johnson v. Olathe Dist. Sch. Unified Sch. Dist. No.
233, Special Servs. Div.*,
316 F. Supp. 2d 960 (D. Kan. 2003).................................................34

*L.B. ex rel. K.B. v. Nebo School Dist.*,
379 F.3d 966 (10th Cir. 2004) ....................................................50, 51

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022)........................................................................45

*KT&G Corp. v. Attorney General of State of Okla.*,
535 F.3d 1114 (10th Cir. 2008) ........................................................44

*Leebaert v. Harrington*,
332 F.3d 134 (2d Cir. 2003) .............................................................35

*M.L. ex rel. Leiman v. Starr*,
121 F. Supp. 3d 466 (D. Md. 2015) ...................................................30

*Lessard v. Wilton Lyndeborough Coop. Sch. Dist.*,
518 F.3d 18 (1st Cir. 2008).............................................................34

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) .........................7, 18, 24

*Lyng v. Northwest Indian Cemetery Protective Ass'n*,
485 U.S. 439 (1988).......................................................................47

*M.L. by Leiman v. Smith*,
867 F.3d 487 (4th Cir. 2017) .......................................................30, 31

*Mahmoud v. Taylor*,
606 U.S. 522 (2025).......................................... 14, 34, 35, 36, 37, 40

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
584 U.S. 617 (2018)..............................................14, 15, 42, 43, 44

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024).......................................................................48

*National Collegiate Athletic Assn. v. Smith*,
525 U.S. 459 (1999).......................................................................31

*Petrella v. Brownback*,
697 F.3d 1285 (10th Cir. 2012) ........................................................7

*Petrella v. Brownback*,
787 F.3d 1242 (10th Cir. 2015) ......................................................39

*Pierce v. Society of Sisters*,
    268 U.S. 510 (1925)............................................................................14

*Pollack v. Reg'l Sch. Unit 75*,
    No. 2:13-CV-109-NT, 2015 WL 1947315 (D. Me. Apr. 29, 2015).............29, 34

*Reedy v. Werholtz*,
    660 F.3d 1270 (10th Cir. 2011) .........................................................39

*Richison v. Ernest Grp., Inc.*,
    634 F.3d 1123 (10th Cir. 2011) ....................................................11, 13

*Rio Grande Found. v. Oliver*,
    57 F.4th 1147 (10th Cir. 2023) ........................................................7, 8

*Roselle v. Berger & Montague, P.C.*,
    753 Fed. Appx. 565 (10th Cir. 2018)...................................................18

*Sandoval v. Unum Life Ins. Co. of Am.*,
    952 F.3d 1233 (10th Cir. 2020) ............................................................7

*Sch. Dist. of Abington Twp., Pa. v. Schempp*,
    374 U.S. 203 (1963).....................................................................20, 46

*Sherbert v. Verner*,
    374 U.S. 398 (1963).....................................................................40, 47

*Sierra Club v. United States Env't Prot. Agency*,
    964 F.3d 882 (10th Cir. 2020) ............................................................17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).....................................................................17, 18

*Stark v. Reliance Standard Life Ins. Co.*,
    142 F.4th 1252 (10th Cir. 2025) .........................................................13

*State v. U.S. Environmental Protection Agency*,
    989 F.3d 874 (10th Cir. 2021) ............................................................24

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).........................................................................17

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017)..............................................................27, 36, 40

*Trump v. Hawaii*,
　　585 U.S. 667 (2018)...........................................................................18

*Turner v. McGee*,
　　681 F.3d 1215 (10th Cir. 2012) ........................................................25

*United States v. Am. Library Ass'n, Inc.*,
　　539 U.S. 194 (2003)................................................................36, 39, 47

*United States v. Cheama*,
　　783 F.2d 165 (10th Cir. 1986) ..........................................................32

*United States v. Ellis*,
　　859 Fed. Appx. 276 (10th Cir. 2021)................................................17

*United States. v. Leffler*,
　　942 F.3d 1192 (10th Cir. 2019) ........................................................12

*United States v. Lyons*,
　　510 F.3d 1225 (10th Cir. 2007) ........................................................11

*United States v. McBride*,
　　94 F.4th 1036 (10th Cir. 2024) .........................................................12

*United States v. Walker*,
　　918 F.3d 1134 (10th Cir. 2019) ........................................................15

*White v. Brenner*,
　　No. 6:10-cv-134-Orl-28GJK, 2011 WL 833981 (M.D. Fla. Mar. 4,
　　2011) ...................................................................................................23

*Whitmore v. Arkansas*,
　　495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ....................7

*WildEarth Guardians v. Public Service of Colorado*,
　　690 F.3d 1174 (10th Cir. 2012) ........................................................25

*Wisconsin v. Yoder*,
　　406 U.S. 205 (1972)...........................................................................35

*Wolfe v. Hill*,
　　No. 8:19-cv-01312-DMG (GJS), 2020 WL 7872127 (C.D. Cal.
　　Aug. 31, 2020) ...................................................................................34

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
566 U.S. 189 (2012) ..................................................................31

*Zobrest v. Catalina Foothills Sch. Dist.*,
509 U.S. 1 (1993) ....................................................................41

**Statutes**

20 U.S.C. § 1401(9)(a) ..............................................................29

20 U.S.C. § 1412(a)(10)(A)(vi)(II) ...........................................25

20 U.S.C. § 1414(d)(1)(A)(i)(II)(bb) .........................................30

28 U.S.C. § 501(c)(3) ................................................................33

42 U.S.C. § 2000e-2(e)(2) .........................................................33

Civil Rights Act of 1964 ...........................................................33

Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et. seq.*...6, 9, 28, 29,
30, 34, 38, 47, 49, 50

K.S.A. 72-1111(a)(2) .................................................................33

K.S.A. 72-3421 ...........................................................................6

K.S.A. 72-3461(c) ......................................................................33

K.S.A. 72-3462 .....................................................................33, 37

K.S.A. 72-3463 ............................. 6, 9, 20, 25, 26, 27, 38, 41, 42, 44, 47, 48

**Other Authorities**

34 C.F.R. § 300.17 ....................................................................29

34 C.F.R. § 300.138(c)(2) ..........................................................25

34 C.F.R. § 300.320(a)(2)(i) ......................................................28

10th Cir. R. 28.1(A) .............................................................12, 13

10th Cir. R. 28.2(B) ..................................................................19

Fed. R. App. P. 32(a)(7)(B) .......................................................53

Fed. R. App. P. 32(a)(7)(B)(iii) ....................................................................53

Fed. R. App. P. 32(a)(7)(C), I ......................................................................53

Fed. R. Civ. P. 56(a)......................................................................................7

First Amendment to the U.S. Constitution ................................................8, 9, 27, 48

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary for this appeal.

## CORPORATE DISCLOSURE

Defendant-Appellee Mark Schmidt, in his official capacity for Blue Valley Unified School District No. 229 ("BV"), is not a corporation.

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals in or from the same civil action.[1]

## STATEMENT OF THE ISSUES

1.      Did Baker fail to preserve her arguments for appeal?

2.      Did the district court properly grant judgment to BV based on lack of standing because Baker had not established an injury in fact?

---

[1] *But see Baker v. USD 229 Blue Valley*, 979 F.3d 866, 873-74 (10th Cir. 2020) (plaintiff could not establish injury in fact based on speculative concern that school district might revoke child's religious exemption to vaccination).

## STATEMENT OF THE CASE

BV is a public school district located in Johnson County, Kansas. Blue Valley Supplemental Appendix ("Supp. App.") Vol. 1 at 4; Aplt. App. Vol. 3 at 127. S.B. is a child who resides within the geographic boundaries of BV. *Id.* Baker is S.B.'s mother and is a Christian. Supp. App. Vol. 1 at 4; Aplt. App. Vol. 3 at 127.

During the 2018-19 and 2019-20 school years, S.B. attended a pre-kindergarten program at Wolf Springs Elementary ("WSE") in BV. Supp. App. Vol. 1 at 4; Aplt. App. Vol. 3 at 127. In May 2018, S.B. was evaluated for special education and received an Individualized Education Program ("IEP"). Supp. App. Vol. 1 at 4; Aplt. App. Vol. 3 at 127. BV personnel provided special education services to S.B. pursuant to his IEP at WSE until early 2020. Supp. App. Vol. 1 at 4, 50-51. Those services were secular in nature and did not contain any religious component. Supp. App. Vol. 1 at 4, 51. Baker was okay with S.B.'s special education services not containing any religious component and did not object to the content or format of the special education services provided to S.B. at WSE at the time they were provided. *Id.* at 5, 50-51. Baker did not request that the special education services S.B. received at WSE be modified to include any religious content. *Id.* at 5, 50-51. Baker could not identify any specific objections she had to the special education services S.B. received at WSE. Supp. App. Vol. 1 at 5, 62. S.B.'s IEP was last updated in April 2020. Supp. App. Vol. 1 at 5; Aplt. App. Vol. 3 at 127.

S.B. did not return to a BV school for the 2020-21 school year. Supp. App. Vol. 1 at 5, 52. Baker's husband, Linus Baker, told BV that they would not be sending S.B. to a BV school due to their opposition to the masking rules BV had in place in response to the COVID-19 pandemic. *Id.* at 5, 78; 52-53. Baker agrees that BV's masking policy was the reason she did not send S.B. to a BV school for the 2020-21 school year. *Id.* at 5, 52. Mr. Baker also told BV that he and his wife had made alternate arrangements for S.B.'s education. *Id.* at 5, 53, 81. Satisfied that the Bakers intended to educate S.B. privately, BV unenrolled him and did not treat him as truant when he did not attend classes. *Id.* at 6, 79. On October 24, 2020, BV sent the Bakers a letter confirming the District's understanding that S.B. had been withdrawn from BV and that the Bakers would be homeschooling him. Supp. App. Vol. 1 at 6, 79, 88. The October 24, 2020, letter also stated BV was ready, willing, and able to provide S.B. with special education services pursuant to his IEP. *Id.* at 6, 79. The Bakers did not take BV up on this offer. *Id.* at 6, 53.

Baker homeschooled S.B. during the 2020-21 school year. Supp. App. Vol. 1 at 6, 54. Baker never asked BV to provide "push in" special education services at her home while she was homeschooling S.B. *Id.* at 6, 53. "Push in" services are special education services in which the instructor goes into the classroom in which the student is typically educated to provide those services. *Id.* at 6, 106.

During the 2020-2021 school year, Baker also sent S.B. to Well Wilderness Kids Therapeutic Nature Center ("Well Wilderness") to receive occupational and

speech therapy. Supp. App. Vol. 1 at 6, 54. Well Wilderness is a secular institution. *Id.* at 6, 54. S.B. attended Whitefield Academy, a religious private school, for the 2021-22 and 2022-23 school years. Supp. App. Vol. 1 at 6; Aplt. App. Vol. 3 at 128. S.B. attended Freedom Learning Academy, a private school, for the 2023-24 and 2024-25 school years. Supp. App. Vol. 1 at 6, 59; Aplt. App. Vol 3 at 128.

Baker does not want to be the one to provide special education services to S.B. herself. Supp. App. Vol. 1 at 7, 65. Baker's preference is for BV personnel to travel to the school at which S.B. is enrolled and provide services there. *Id.* at 7, 60, 62, 64. Baker has never made a specific request to BV for BV to provide services at any location other than a BV facility. *Id.* at 7, 60. Baker wants BV personnel to provide S.B. with services "if they do it the way that I want it and where I want it." *Id.* at 7, 62.

BV's practice is to provide special education services to private school students by transporting them to a BV school and providing the services there. Supp. App. Vol. 1 at 7; Supp. App. Vol. 2 at 1, and 2. BV does so for reasons of cost and efficiency. Supp. App. Vol. 1 at 7; Supp. App. Vol. 2 at 1. BV does not customize the services it provides to private school students to the curricula of their respective private schools, without regard to whether those private schools are religious or secular. Supp. App. Vol. 1 at 8; Supp. App. Vol. 2 at 2. Baker has never made a request to BV for any customized special education services containing any particular religious instruction or elements. Supp. App. Vol. 1 at 8; Supp. App. Vol.

4

2 at 2. BV first learned Baker contends that she wants special education services containing some religious component when she raised that argument as part of a claim in a prior lawsuit in which BV was a party. Supp. App. Vol. 1 at 8; Supp. App. Vol. 2 at 2.

On April 27, 2021, BV's Assistant Superintendent for Special Education, Mark Schmidt ("Schmidt"), informed Baker's husband that BV was unable to legally provide special education services during a student's religious training or activities but told Mr. Baker that BV was ready, willing, and able to provide S.B. special education services. Supp. App. Vol. 1 at 8; Supp. App. Vol. 2 at 3, 5.

Baker testified that she does not want S.B.'s special education instruction to include religious teachings. Supp. App. Vol. 1 at 8, 60. Baker does not want S.B.'s special education services to involve the use of religious materials. *Id.* at 8, 60, 61. Baker's religious beliefs do not require S.B. to be educated in a religious setting and are wholly compatible with his receiving secular instruction. *Id.* at 9, 49. Baker believes herself obligated to ensure that S.B. learns good moral character and is not exposed to sex education or books that include profanity or sex. *Id.* at 9, 49.

Baker's home library, which she used as the curriculum when she was homeschooling S.B. in 2020-21 and for supplemental educational work, contains secular texts as well as Christian texts. Supp. App. Vol. 1 at 9, 61. Among the secular texts in Baker's library are Green Eggs and Ham, Harold and the Purple Crayon, Minecraft Stonesword Saga and Dog Man. *Id.* at 9, 61-62. Baker has also used

5

secular materials, specifically the "Guided Science Readers" series published by Scholastic, in working with S.B. to address his learning difficulties. *Id.* at 9, 56-57.

On March 23, 2023, Baker and her husband filed a Notice of Parent's Request for Special Education Due Process Hearing, initiating a due process proceeding under IDEA that raised the issues covered by their claims in this litigation. Supp. App. Vol. 1 at 10; Supp. App. Vol. 2 at 3. On April 10, 2023, the Due Process Hearing Officer assigned to the Bakers' IDEA due process proceeding dismissed the Baker's notice without prejudice on the grounds that it did not adequately identify or provide support for any IDEA claims. Supp. App. Vol. 1 at 10; Supp. App. Vol. 2 at 4, 143. On May 1, 2023, a Kansas Administrative Law Judge upheld the decision of the Due Process Hearing Officer. Supp. App. Vol. 1 at 10 and Supp. App. Vol. 2 at 4, 146. Baker did not submit a new request for a due process hearing correcting the deficiencies identified by the Due Process Hearing Officer. Supp. App. Vol. 1 at 10; Supp. App. Vol. 2 at 4.

BV has no role in "enforcing" K.S.A. 72-3421, K.S.A. 72-3463, or K.A.R. 91-40-48(c)(2) with respect to the private provision of special education services, in enforcing parents' compliance with K.S.A. 72-3421 or in monitoring private provision of such services. Supp. App. Vol. 1 at 10; Supp. App. Vol. 2 at 4.  From 2020 to present, BV has repeatedly communicated that it is ready, willing, and able to provide S.B. with appropriate special education and related services. Supp. App. Vol. 1 at 10, 79-80, 88, 89; Supp. App. Vol. 2 at 3, 5, 8, 9. From August 2020 to

present, Baker has never presented S.B. to Stilwell Elementary for any educational services. Supp. App. Vol. 1 at 10, 79, 80.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal for lack of standing de novo, applying the same standard used by the district court. *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012) (citing *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1189 (10th Cir. 2000). Appellant Terri Baker, as the party seeking to invoke federal court jurisdiction, bears the burden of establishing standing. *Petrella*, 697 F.3d at 1292 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005)). "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155–56, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).

Likewise, the Court reviews a grant of summary judgment de novo, applying the same standard as applied by the district court. *Sandoval v. Unum Life Ins. Co. of Am.*, 952 F.3d 1233, 1236 (10th Cir. 2020). Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The court views the evidence and makes reasonable inferences in the non-movant's favor." *Rio*

*Grande Found. v. Oliver*, 57 F.4th 1147, 1159 (10th Cir. 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## SUMMARY OF THE ARGUMENT

The district court correctly entered summary judgment in favor of BV based on Baker's lack of standing. This is a classic "generalized grievance" suit, in which Baker objects to the law she is challenging but has not been concretely harmed by it. Baker is a religious person but her beliefs are not incompatible with secular education. She has never requested any specific special education services from BV that have been denied. Even now she cannot specify what exactly it is that she wants BV to provide or how that offering would burden her religious beliefs. This case also has a fundamental redressability problem. A federal statute, which Baker does not challenge, imposes the same bar as Kansas law does; thus, even if Baker prevails BV will still be prohibited from providing her whatever religious special education services she ultimately decides she wants for S.B.

The Court can, and should, resolve this appeal on the question of standing. But if the Court decides to look further, it should reject Baker's  merits arguments. She has not preserved her arguments by failing to comply with this Court's local rules, by raising new arguments not presented below, and by raising certain arguments on appeal only in passing. On the merits, Baker's arguments are premised on a fundamental misunderstanding as to how special education services work and on incorrect application of the relevant First Amendment precedents.

## ARGUMENT

### I.  <u>Introduction</u>

Baker brought this lawsuit against BV, alleging constitutional violations relating to BV's adherence to Kansas special education law, which itself implements the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et. seq.* Baker specifically challenges the constitutionality of K.S.A. 72-3463 and K.A.R. 91-40-48(c)(2).[2] Those laws prevent First Amendment Establishment clause entanglement by public schools when they provide special education services to students who attend religious private schools and homeschools. The district court ultimately dismissed all of Baker's claims for lack of standing because Baker failed to establish she suffered an injury in fact.

This case involves a perplexing dichotomy between the plaintiff's arguments and the plaintiff's actual testimony, which goes to the heart of Baker's standing problem. In her opening brief, Baker argues her religious beliefs are burdened because BV supposedly refuses to provide special education services to Baker's son, S.B., in a manner consistent with her beliefs. Baker's demanded special education services are entirely unclear, but she nevertheless argues she has a First Amendment

---

[2] K.S.A. 72-3463 provides: "No special education services shall be provided in connection with religious courses, devotional exercises, religious training, or any other religious activity." K.A.R. § 91-40-48(c)(2) provides, "Each agency shall ensure that special education and related services provided to exceptional children enrolled in private schools are provided in a secular and nonideological manner."

right to require public school personnel to use her chosen religious curriculum "during" the provision of S.B.'s IEP services and/or to design S.B's special education services that incorporate her chosen religious curriculum, Aplt. Br. at 40-41. These legal contentions are flatly wrong as will be detailed below.

But as an initial matter, these arguments do not square with Baker's own testimony. The evidence shows BV found S.B. eligible for special education services years ago and has repeatedly told Baker it is ready, willing, and able to provide S.B. with those services. In contrast to the arguments made in her opening brief, Baker testified at her deposition she does not want S.B.'s special education instruction to include religious teachings. Supp. App. Vol. 1 at 8, 60. Baker simply wants S.B. to learn good moral character. Supp. App. Vol. 1 at 9, 49. In contrast to her legal arguments, Baker does not want S.B.'s special education services to involve the use of religious materials. Supp. App. Vol. 1 at 8, 60, 61. Baker's religious beliefs do not require S.B. to be educated in a religious setting. Supp. App. Vol. 1 at 9, 49. In her own home, Baker educates S.B. with secular materials and has enrolled S.B. in multiple secular schools during the past few years. Supp. App. Vol. 1 at 6, 9, 54, 59-62; Aplt. App. Vol 3 at 128.

Ultimately, Baker testified she simply wants BV personnel to provide S.B. with services "if they do it the way that I want it and where I want it." Supp. App. Vol. 1 at 7, 62. Baker also acknowledged she has never requested BV to provide S.B. with special education services in the private or homeschool setting; and she

has never requested BV to provide S.B. with any religious instruction. Supp. App. Vol. 1 at 8; Supp. App. Vol. 2 at 2.

Baker's "injury" is a run-of-the-mill generalized grievance. As the district court concluded, "Blue Valley did not deny S.B. special education services at all, much less in violation of either the First or Fourteenth Amendments to the Constitution." Aplt. Addendum at A-9. Whatever interesting legal questions she may raise, Baker is not the right person to prosecute them. BV has done nothing to infringe Baker's religious beliefs and she has no standing to pursue her claims. The district court's rulings should be affirmed. And this Court need not even reach the question because Baker failed to properly preserve her arguments for appeal.

## II.    <u>Baker has failed to preserve any arguments for appeal.</u>

The Court can reject Baker's appeal at the threshold because she has failed to actually preserve any arguments for appellate review. This Court does not consider unpreserved arguments unless the appellant expressly requests plain error review. *First W. Cap. Mgmt. Co. v. Melamed*, 874 F.3d 1136, 1144 (10th Cir. 2017). While the Court has discretion to hear non-preserved issues on appeal, it does so only where the issue to be reviewed "is a pure matter of law and its proper resolution is certain"—*i.e.*, plain error. *United States v. Lyons*, 510 F.3d 1225, 1238 (10th Cir. 2007). "To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Richison v. Ernest*

11

*Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). The plain error exception does not apply here, both because Baker has not requested plain error review on any issue and because, in any event, she would not be entitled to it.

> **1.    Because Baker failed to comply with Tenth Circuit Rule 28.1, the Court can presume that she failed to preserve her arguments.**

Under the local rules of this circuit, an appellant's brief must, for every issue raised on appeal, expressly identify where in the record that argument was preserved:

> For each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on. Counsel are encouraged to include a footnote in the briefs at the point of the first record citation to confirm the citation convention.

10th Cir. R. 28.1(A). Where an appellant does not comply with this briefing requirement, this Court presumes that appellant failed to preserve the issue and declines to consider the argument on appeal. *United States. v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). Circuit precedent is likewise clear that the briefing requirements in Rule 28.1(A) are "distinct" from the underlying obligation to actually preserve the argument below. *United States v. McBride*, 94 F.4th 1036, 1048 (10th Cir. 2024) ("[T]hat a party preserved an error below does not empower them to then forgo whatever procedural rules they deem inconvenient here."). An appellant cannot excuse their failure to comply with the requirements of Rule 28.1 by subsequently identifying where in the record the argument was preserved. Thus, an appellant cannot cure this issue in its reply brief. *Leffler*, 942 F.3d at 1197.

Baker's brief does not comply with Rule 28.1(A). There are no citations to the record showing preservation in her Statement of the Issues. *See* Aplt. Br. at 5-10. Nor are there any in her Summary of Argument section. *See id.* at 33-39. There is no discussion of preservation in the Standard of Review section, nor any indication that Baker requests that any issues be considered on appeal under a plain error standard. *See id.* at 39 While Baker's Argument section contains a handful of record cites (*see, e.g., id.* at 40), it never does so in the context of demonstrating that an argument has been raised and ruled on below. *See generally id.* at 30-65. Baker's brief does not even attempt to comply with the rule. This Court can (and, respectfully, should) treat all her arguments as waived.

### 2.   Baker did not in fact preserve many of the arguments she presents on appeal.

"Where, as here, a plaintiff pursues a new legal theory for the first time on appeal, that new theory suffers the distinct disadvantage of starting at least a few paces back from the block." *Richison*, 634 F.3d at 1127. Where an argument was actually presented below but was subsequently "relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it." *Id.* Where, in contrast, the issue was not actually raised before the trial court at all, it is considered "forfeited" and can only be considered on appeal "if failing to do so would entrench a plainly erroneous result." *Id*. at 1128. A party cannot avoid forfeiture by simply adverting to an issue in passing before the trial court. *Stark v. Reliance Standard Life*

*Ins. Co.*, 142 F.4th 1252, 1260 (10th Cir. 2025) ("We have repeatedly held that 'where an issue is raised but not pursued in the trial court, it cannot be the basis for the appeal,' and 'vague, arguable references to [a] point in the district court proceedings do not . . . preserve the issue on appeal.'"), *quoting Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 722 (10th Cir. 1993).

Baker's argument that the Kansas special education framework unconstitutionally interferes with parental choice under *Mahmoud v. Taylor*, 606 U.S. 522 (2025) and *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), is a good example of this. *Mahmoud* is never mentioned in the record on appeal. Baker does not raise *Pierce* in any of her summary judgment briefing. *See generally* Aplt. App. Vol 6 at 4-43, 84-138. Nor is there any substantive argument (at least, none that BV can identify) that either the Kansas framework or BV's implementation thereof improperly seeks to substitute the state's theological judgments for that of the parents. (The only discussion of the state substituting its judgment for that of Baker comes in the context of an abandoned-on-appeal argument regarding associational rights. *See id.* at 125.)

Another example is Baker's "hostility to religion" argument based on *Masterpiece Cakeshop*, *Ltd. v. Colo. Civil Rights Comm'n*, 584 U.S. 617 (2018). While Baker presented an argument based on *Masterpiece Cakeshop* below, the argument was completely different from the argument presented on appeal. Below, Baker's argument was that the statutory framework itself improperly targeted

14

religion due to the lawmakers' animus. Aplt. App. Vol. 6 at 27-28. On appeal, she has abandoned that argument, possibly in response to BV noting below that she had not presented any evidence supporting this argument. *Id.* at 73. Instead, she now argues that the statutory framework is fine but that the impermissible bias under *Masterpiece Cakeshop* is actually <u>BV's</u> conduct, in the form of certain statements mostly drawn from BV's summary judgment reply below. Aplt. Br. at 22-23, 51-52. That argument, however, is found nowhere in any of Baker's briefing below and was thus not preserved.

### 3.    Arguments not addressed in Baker's Argument section are not properly preserved on appeal.

A core premise of appellate practice is that the Court only considers arguments that are presented in a meaningful way. Arguments that are not presented in the appellant's opening brief at all are waived and are generally not considered. *United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019). "This briefing-waiver rule applies equally to arguments that are 'inadequately presented' in an opening brief." *Id.*, *quoting Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). It is well established that arguments presented on appeal "in a perfunctory manner" are treated as waived. *Griffith v. El Paso Cnty., Colo.*, 129 F.4th 790, 825 (2025). Most often, this involves arguments raised exclusively in footnotes. *See id.* But even where they are included within the body of the brief, "cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid

application of the forfeiture doctrine." *Bronson*, 500 F.3d at 1105. Arguments that are not actually included in the Arguments section of the appeal brief are likewise disregarded, even if there are passing references to the argument elsewhere in the brief. *See Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1133 n.4 (10th Cir. 2004) ("Plaintiff did not mention these issues anywhere in the argument section of his brief on appeal. They have therefore been waived. . . . Scattered statements in the appellant's brief are not enough to preserve an issue for appeal.")

For reasons that are unclear, Baker's Table of Contents contains numerous references to arguments that are not actually found in the body of Baker's brief. *See, e.g.,* Aplt. Br. at iii (indicating that the brief contains an argument section titled "The State Creates a Coercive Choice" that is not found at the identified page, or indeed anywhere in the brief). Arguments raised solely in the Table of Contents are perfunctory and do not preserve anything for the Court's review. Likewise, the brief contains several arguments that appear exclusively, and even then only briefly, in the Statement of the Issues, Summary of Argument, or Conclusion, but are never actually addressed in the ostensible Argument section of the brief. *See, e.g., id.* at 7, 34, 70 (sketching "viewpoint discrimination" argument that is absent from the actual Argument section). Under *Exum*, these arguments too have not been properly preserved, and the Court may disregard them.

**III.** **The District court properly concluded that Baker lacks standing.**

**1.** **Subject-matter jurisdiction requires Baker to establish standing.**

Federal courts have limited subject-matter jurisdiction. *United States v. Ellis*, 859 Fed. Appx. 276, 278 (10th Cir. 2021). Plaintiffs must establish that they have standing to assert a claim. *Sierra Club v. United States Env't Prot. Agency*, 964 F.3d 882, 888 (10th Cir. 2020). This requirement flows from the Constitution itself. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: 'What's it to you?'"). "[F]ederal courts do not issue advisory opinions about the law…. Nor do federal courts operate as an open forum for citizens to press general complaints about the way in which government goes about its business." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378-79 (2024) (quotation marks omitted).

The standing requirement serves a vital constitutional role. "The doctrine of standing 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong' and 'confines the federal courts to a properly judicial role.'" *Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019), quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[T]he standing requirement means that the federal courts decide some contested legal questions later rather than sooner, thereby allowing issues to percolate and potentially be resolved by the political branches in the democratic process." *All. for Hippocratic Med.*, 602 U.S. at 380.

17

"To establish standing … a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *All. for Hippocratic Med.*, 602 U.S. at 380. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Injury in fact is "the 'first and foremost' of standing's three elements." *Spokeo*, 578 U.S. at 338, quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998). It is a vital support for the separation-of-powers concerns that animate the case-or-controversy requirement. "Standing requires more than just a 'keen interest in the issue.'" *Trump v. Hawaii*, 585 U.S. 667, 697 (2018), quoting *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013). "To establish an injury sufficient for Article III standing, 'a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Roselle v. Berger & Montague, P.C.*, 753 Fed. Appx. 565, 569-70 (10th Cir. 2018), quoting *Spokeo*, 578 U.S. at 330.

"The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" *All. for Hippocratic Med.*, 602 U.S. at 380, quoting *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 288 (2008). "If a defendant's action causes an injury, enjoining the action or awarding

damages for the action will typically redress that injury." *All for Hippocratic Med.*, 602 U.S. at 381.

In sum, where a plaintiff fails to demonstrate actual injury—and with it standing—the federal court hearing the suit lacks subject-matter jurisdiction and must dismiss the action.

**2.    The district court held Baker lacks standing to pursue any of her claims against BV because she did not suffer an injury in fact.**

The district court issued two orders that collectively held Baker lacks standing to assert any of her claims against BV. On June 25, 2024, the district court granted in part BV's motion to dismiss, concluding Baker had failed to adequately plead an injury-in-fact as to as either her Free Speech claim (Count III) or her claim that BV interfered with Baker's right to control S.B.'s religious upbringing (Count VI). Aplt. App. Vol. 3 at 116-119.[3] In that order, the district court concluded Baker's "bald, perfunctory allegation" that BV's mere compliance with Kansas law was not sufficient to allege either compelled speech or a violation of Baker's right to direct S.B.'s religious upbringing. App. Vol. 3 at 103. The district court later granted

---

[3] Although it is included in Appellant's Appendix, Baker did not include a copy of this order as an attachment to her brief. Baker's opening brief makes no arguments whatsoever relating to the Free Speech claim (Count III) dismissed in the June 25, 2024 order; her brief is unclear at best as to whether Baker is appealing her claim for interference with the religious upbringing of S.B., which were also dismissed in that order (Count IV). Baker has waived any appeal of the June 25, 2024 order as to claims against BV. BV has nevertheless included the June 25, 2024 order in its Addendum as a relevant order, per 10th Cir. R. 28.2(B).

summary judgment to BV on Baker's remaining Free Exercise claims, Counts I, II, IV, and V, concluding discovery showed Baker lacked standing on those claims for the same reason—Baker had not suffered an injury in fact. App. Vol. 6 at 139. The district court's orders should be affirmed; Baker lacks standing.

3.   **The evidentiary record establishes Baker has not sustained an injury in fact to support her Free Exercise and Equal Protection claims.**

Notwithstanding the arguments of Baker's counsel, Baker has never asked BV to provide S.B. with special education services involving religious content or based on a particular religious private or homeschool curriculum. She also does not object more generally to S.B. receiving education in a secular environment, covering secular topics, or using secular materials. Thus, Baker has not actually sustained the injury in fact she claims and, as such, she lacks standing.

To establish an injury in fact sufficient to assert a Free Exercise claim, a plaintiff "must show that the challenged government action infringes on their 'particular religious freedoms.'" *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1186 (10th Cir.2013) (Matheson, J., concurring in part and dissenting in part), aff'd, 573 U.S. 682 (2014), quoting *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 224 n. 9 (1963). The statutes and regulation Baker seeks to invalidate, K.S.A. 72-3463 and K.A.R. 91-40-48(c)(2), do not require her to abjure any religious convictions she actually holds.

Baker's own testimony paints a vastly different picture than her appeal brief. In the operative Complaint, Baker _alleges_ BV's refusal to use religious materials during special education instruction or to provide special education services during religious instruction burdens the exercise of her religious beliefs. Yet Baker's deposition testimony conclusively demonstrates that neither the Kansas legal framework relating to special education services nor BV's policy of following that Kansas law has ever actually infringed upon Baker's religious freedoms.

Contrary to her pleadings, Baker testified she has no desire for S.B.'s special education services to include religious teachings. Supp. App. Vol. 1 at 8, 60. Baker also testified she has no desire for S.B.'s special education services to involve the use of religious materials. _Id._ at 8, 60, 61. Her own testimony shows that Baker does not even want—let alone believe she is religiously obligated to procure—the central thing called for by her Free Exercise claim: for S.B. to receive special education services that contain religious content.

Baker's past behavior further shows that she does not consider herself religiously-obligated to ensure S.B. receives special education services containing religious content. S.B. received secular special education services from BV at a BV school from 2018 to 2020. Supp. App. Vol. 1 at 4, 51. Baker was aware of this and did not object to the secular nature of those services. _Id._ at 5, 50-51. While S.B. was receiving special education services at a BV school, Baker never requested that S.B. receive those services in connection with religious practice. _Id._ Even now, Baker

could not identify anything BV had done while providing those services that concerned her. *Id.* at 5, 62.

Baker wants to ensure that S.B. learns good moral character and that he is not exposed to sex education or profanity. Supp. App. Vol. 1 at 9, 49. When Baker decided not to send S.B. to BV in the 2020-21 year, she did so not out of concern with the nature of the secular education S.B. would receive but out of disapproval of the anti-COVID measures BV had put in place. *Id.* at 5, 52-53, 78.

Since withdrawing S.B. from BV, Baker has enrolled him in secular as well as religious private schools. The record shows S.B. most recently attended a secular private school, Freedom Learning Academy, since the start of the 2023-24 school year. *Id.* at 6, 59; Aplt. App. Vol 3 at 128. And Baker does not object to S.B. being educated using secular materials. Her home library, which she used as a homeschool "curriculum" in 2020-2021 and that she still uses, contains secular texts in addition to Christian materials. Supp. App. Vol. 1 at 9, 61-62.

Baker's testimony demonstrates she does not have a religious objection to S.B. being educated in a secular setting, on secular topics, or using secular materials. Baker's religious convictions do not compel her to obtain religiously-oriented special education services for S.B. What she actually wants is something more pedestrian: the general right to control where, and how, S.B.'s special education services are provided. Supp. App. Vol. 1 at 7, 62. This is an understandable desire— one likely shared by many parents—but it does not supply the basis for a Free

Exercise claim. Moreover, it does not align with the injury that Plaintiff has alleged supports her Free Exercise claim in this suit. Plaintiff has not actually suffered the claimed injury and lacks standing as to Counts I, II, and V.

Baker also lacks an injury-in-fact to pursue her Equal Protection claim. She contends BV provides "push in" special education services to students with IEPs who attend secular private schools but will not do so for S.B. since he is allegedly being educated in a religious environment. This claim is premised on multiple, fundamental misunderstandings regarding Kansas law, as discussed at below. But in any event Baker, who is neither homeschooling S.B. nor sending him to a religious school, does not have standing to make this challenge.

To have standing to bring an equal protection claim, a plaintiff must be part of the allegedly disadvantaged class. *See, e.g., Ford v. Seabold*, 841 F.2d 677, 689 (6th Cir. 1988) (plaintiff lacked standing to challenge underrepresentation of women since he was not a member of that class); *White v. Brenner*, No. 6:10-cv-134-Orl-28GJK, 2011 WL 833981, at *6 (M.D. Fla. Mar. 4, 2011) (same).

Here, Baker is not a member of either class that she alleges the law discriminates against. Baker currently sends S.B. to a secular private school, She neither homeschools S.B. nor sends him to a private religious school. She is thus not a member of the class of either homeschooling parents or parents who send their children to private religious schools. Thus, even if her equal protection claim had

substantive merit—and, as discussed below, it does not—she would not have standing to pursue it.

The record also demonstrates no different treatment between classes in the first place: students who attend private schools or homeschools, whether religious or secular, are treated the same. Supp. App. Vol. 1 at 7; Supp. App. Vol. 2 at 1, 2. BV doesn't customize the special education services it provides to private school or homeschool students to the curricula of those schools, regardless of the type of school. Supp. App. Vol. 1 at 8; Supp. App. Vol. 2 at 2. BV also follows its practice of transporting students to District buildings for special education and related services regardless of where students receive private or homeschool education. Supp. App. Vol. 1 at 7; Supp. App. Vol. 2 at 1, 2.

> **4. Baker also failed to establish causation and redressability, further dooming her claim to standing.**

While it was not the focus of the district court's analysis, Baker further lacks standing because she has failed to meet the causation and redressability elements.

"To demonstrate causation, [a plaintiff] must show that his injury is 'fairly traceable' to the defendants' actions." *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008), quoting *Lujan*, 504 U.S. at 560. Self-inflicted injuries do not confer standing. *See State v. U.S. Environmental Protection Agency*, 989 F.3d 874, 888 (10th Cir. 2021). Likewise, fear of injury is not enough. *Baker*, 979 F.3d at 873 (plaintiff could not establish injury in fact based on concern that

school district might revoke child's religious exemption to vaccination). On the flip side, "[to] demonstrate redressability, a party must show that a favorable court judgment is likely to relieve the party's injury." *City of Hugo v. Nichols (Two Cases)*, 656 F.3d 1251, 1264 (10th Cir. 2011). "In addition, the plaintiff must demonstrate that a favorable judgment would have a binding legal effect." *WildEarth Guardians v. Public Service of Colorado*, 690 F.3d 1174, 1182 (10th Cir. 2012). Where a defendant, even if it were "enjoined as [plaintiff] has requested," would not actually be able to undertake the action that would resolve the alleged injury, redressability is lacking. *See Turner v. McGee*, 681 F.3d 1215, 1218-19 (10th Cir. 2012).

Baker's claimed injury is not redressable by the relief she seeks. Even if the Court were to declare K.S.A. 72-3463 and K.A.R. 91-40-48(c)(2) unconstitutional and enjoin BV from "enforcing" or otherwise abiding by them, BV would not be able to change its practices, because the same conduct would still be compelled by 20 U.S.C. § 1412(a)(10)(A)(vi)(II) and 34 C.F.R. § 300.138(c)(2), which would remain in effect and binding on BV. BV would still not be permitted to give Baker what she purports to want—special education services containing a religious component—because a binding federal statute would still require it to provide special education services that are "secular, neutral, and nonideological." 20 U.S.C. § 1412(a)(10)(A)(vi)(II). Thus, the relief Baker seeks would not actually remedy the injury she contends she has suffered.

5.    **Baker's arguments merely reinforce that she has a generalized grievance.**

Baker never comes out, even now, and cleanly states how BV has injured her. Her arguments on appeal, to the extent they can be understood, merely reenforce Baker's lack of injury and reflect a generalized grievance with K.S.A. 72-3463 and K.A.R. 91-40-48(c)(2)—not a real, actual, or imminent injury to Baker.

*First*, Baker claims she has sustained an injury merely by the existence of K.S.A. 72-3463, which she claims is facially discriminatory. Aplt. Br. at 34, 40. This is complete conjecture. A simple reading of K.S.A. 72-3463 contradicts Baker's argument that S.B. was barred from receiving special education services from BV merely by the existence of that statute.

K.S.A. 72-3463 provides: "No special education services shall be provided in connection with religious courses, devotional exercises, religious training, or any other religious activity." K.S.A. 72-3463 does not prevent students in private religious schools or religious homeschools from receiving special education services from public schools. It simply prevents Establishment Clause entanglement by public schools when they provide special education services to students in religious settings. *See Baker v. Blue Valley Sch. Bd.*, 543 P.3d 1179 (unpublished), 2024 WL 740443, at *11 (Kan. Ct. App. Feb. 23, 2024) (K.S.A. 72-3463 "only prohibits public schools from providing religiously oriented special education services—not parents

or private schools."). The evidence here further shows BV has a policy of providing special education services to students who attend private religious schools and religious homeschools, and in the same manner as students who attend secular private or homeschools. Supp. App. Vol. 1 at 7-8; Supp. App. Vol. 2 at 1, 2.

*Second*, Baker argues repeatedly that U.S. Supreme Court precedent has rejected what she calls a "no request, no injury" framework. Aplt. Br. at 42. But the case law is not so definitive. In *Trinity Lutheran*, the plaintiffs sought and were denied the government benefit that was the basis of their First Amendment challenges—and their standing was not at issue. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 453–54 (2017) (plaintiff church applied for state-sponsored grant for its preschool and daycare center and would have received one, but for the fact plaintiff was a church). In *Carson v. Makin*, plaintiff parents sued the state of Maine based on the state's tuition reimbursement program that categorically excluded reimbursement to parents whose students attended private sectarian schools. 596 U.S. 767, 773–77 (2022). But again, standing was not an issue in *Carson*. This makes sense because there was apparently no dispute that the *Carson* plaintiffs were excluded under Maine law from tuition reimbursement because of their connection to a religious school. *See id.*

Not so for Baker. K.S.A. 72-3463 and K.A.R. 91-40-48(c)(2) don't categorically prevent Baker from receiving the government benefit at issue— publicly-provided special education services for S.B. while S.B. attends a religious

private school or homeschool. Thus, Baker's contention that she is injured merely by existence of those laws—without ever engaging in the IEP development process to determine the location and nature of services for S.B.—is unavailing. As detailed above, Baker's own beliefs are not actually in conflict with secular education provided by BV personnel at a BV school; and BV has not refused to provide S.B. with special education services in the first place. These facts buttress the district court's conclusion that Baker's failure to even _request_ special education services under terms that satisfied her religious beliefs is fatal to standing. She merely speculates that what BV would have offered would not have met her approval.

For the same reasons, Baker's futility argument falls flat. It ignores what Kansas law actually says and the facts showing BV's consistent offer to provide S.B. with special education services, as BV does for other students who attend private schools or homeschools.

_Third_, Baker argues BV's policy of providing special education services only based on BV's curriculum—and not designing an IEP based on a student's private or homeschool curriculum that may involve religious study—is evidence of injury to Baker. Aplt. Br. at 41. This argument ignores IDEA regulations and the abundant caselaw interpreting them, which give school districts the ultimate decision-making authority.

Baker offers a twisted interpretation of 34 C.F.R. § 300.320(a)(2)(i). That regulation provides that a student's IEP must contain, among other things, goals "to

28

enable the child to be involved in and make progress in the general education curriculum[.]" Baker claims Congress's failure to explicitly state that this refers to the "*school district's* general education curriculum" means that phrase essentially intends the opposite—that curriculum is based on parental placement. Aplt. Br. at 48. Baker's interpretation is supported nowhere in the text of IDEA and would turn IDEA on its head.

On the contrary, IDEA places curricular control with school districts. No parents—regardless of their secular or religious beliefs—are entitled under IDEA to dictate the curriculum or materials that a school district uses to create or implement a student's IEP. *E.g. Pollack v. Reg'l Sch. Unit 75*, No. 2:13-CV-109-NT, 2015 WL 1947315, at *16 (D. Me. Apr. 29, 2015); *Greenwood v. Wissahickon Sch. Dist.*, 571 F.Supp.2d 654, 663 (E.D. Pa.2008) ("Parents do not have a right to compel a school district to provide a specific program or employ a specific methodology in educating a student."); *see also* 20 U.S.C. § 1401(9)(a) (definition of FAPE "means special education and related services that have been provided at public expense, *under public supervision and direction*" (emphasis added); 34 C.F.R. § 300.17. Baker therefore cannot require BV to use the curriculum of her own choosing, religious *or* secular, nor can any other parent.

Baker framed this argument differently to the district court, arguing that an IEP should reflect or include components of a student's religious education. But IDEA explicitly states that a student's "other educational needs" that must be

addressed in a student's IEP are limited to those that "result from the child's disability." 20 U.S.C. § 1414(d)(1)(A)(i)(II)(bb) (the student's IEP academic and functional goals must "meet each of the child's other educational needs *that result from the child's disability*" (emphasis added)). There is no statutory support for Baker's contention that an IEP should involve components of a student's private school curriculum, as dictated by the parents.

In a very similar case, U.S. District Court for the District of Maryland rejected this argument. Orthodox Jewish parents demanded that their child's IEP include components to prepare him for life as a member of that faith under the umbrella of the child's "other educational needs." The district court disagreed:

> The IEP is 'individualized' or 'personalized' to ensure that a child can access that education, considering his or her individual or personal cognitive and developmental capabilities and needs. In this regard, Plaintiffs have pointed to no authority, nor have I found any, that expands the requirement of the IDEA that an IEP be 'individualized' to the extent that it affords a qualified student with an educational program specifically tailored to the religious and cultural enclave in which the student lives.

*M.L. ex rel. Leiman v. Starr*, 121 F. Supp. 3d 466, 476 (D. Md. 2015) (citations omitted). The Fourth Circuit affirmed, holding that "other educational needs" does not mean "all other educational needs." *M.L. by Leiman v. Smith*, 867 F.3d 487, 498-99 (4th Cir. 2017). "[T]he IDEA does not require a public school to account for every deficiency a disabled student might possess, just like a school does not have to exhaust its resources to enable a nondisabled student to achieve his ultimate

potential. . . . The relevant circumstance here is that M.L. is disabled, not that he is of the Orthodox Jewish faith." *Id.* at 499.

Baker ignores *Leiman* entirely in her brief. Regardless, unlike the parents in *Leiman*, Baker has not bothered to go through the IEP process to seek IEP services for S.B. that are consistent with her religious beliefs. She has no idea whether BV will provide them or not. Baker has not been injured by BV. She has manufactured this claim based on a generalized disagreement with Kansas law. The district court correctly concluded she lacks standing.

## IV.    If the Court finds Baker has standing, it should remand for further proceedings on the merits of Baker's substantive claims.

The district court resolved the claims in this case exclusively on the threshold question of standing and never directly considered the merits of Baker's claims. For the reasons stated above, the Court should affirm on standing grounds. But if the Court determines that Baker in fact has standing, the appropriate course of action would be to reverse and remand for further proceedings without pre-deciding the merits of Baker's claims.

In the ordinary course, appellate courts "do not decide in the first instance issues not decided below." *National Collegiate Athletic Assn. v. Smith*, 525 U.S. 459, 470 (1999). "In particular, when we reverse on a threshold question, we typically remand for resolution of any claims the lower courts' error prevented them from addressing." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 201 (2012). This

practice applies where the lower court erroneously dismissed a statutory challenge on the grounds that the plaintiff lacked standing; such cases are usually remanded so that "the merits of petitioner's challenge to the statute's validity [can] be considered, in the first instance," by the lower court. *Bond v. United States*, 564 U.S. 211, 214 (2011). While this Court has discretion to consider properly preserved merits questions that are subsumed by the appeal on the threshold question, the preferred practice is to remand so that the district court can take the initial pass at a substantive decision. *United States v. Cheama*, 783 F.2d 165, 168 (10th Cir. 1986).

Here, the parties created an extensive summary judgment record that the district court did not analyze, except with respect to the standing question. BV respectfully submits that the Court should remand if it concludes that Baker has standing rather than considering the merits. However, if the Court decides to consider Baker's substantive arguments, it should still reject them.

## V.     **The Kansas framework does not violate Equal Protection.**

Baker contends that the Kansas framework violates equal protection. *See* Aplt. Br. at 57-61. Baker's equal protection argument is fundamentally premised on a misunderstanding of how special education services operate. Baker contends, variously, that non-disabled students have full school choice while disabled students do not and that disabled students enrolled at secular private schools "receive public services without surrendering their curriculum" whereas "religious-school students are categorically excluded." *Id.* at 9, 37-38, 71-72. Neither is the case.

32

Under the Kansas framework, publicly provided special education services are equally available to students enrolled in private schools regardless of whether those schools are secular or religious. School districts can provide special education services to students enrolled in a "private, nonprofit elementary or secondary school." K.S.A. 72-3462. Such a school is defined as "an organization which regularly offers education at the elementary or secondary level, which is exempt from federal income taxation under section 501 of the federal internal revenue code of 1954, as amended, which conforms to the civil rights act of 1964, and attendance at which satisfies any compulsory school attendance laws of this state." K.S.A. 72-3461(c). This definition doesn't exclude religious schools. They can be exempted under Section 501. *See* 28 U.S.C. § 501(c)(3). They can comply with the Civil Rights Act. *See, e.g.,* 42 U.S.C. § 2000e-2(e)(2). They can satisfy Kansas's compulsory school attendance laws. *See* K.S.A. 72-1111(a)(2). The religious character of a private school in no way disqualifies its students from receiving special education services.

Nor do students enrolled at secular private schools have an ability to customize their special education services that is denied to students at religious schools. All students, whether religious or secular, get the same thing from BV: secular special education services provided by BV personnel at a BV school and customized to the student's individual needs—but not to the curriculum of the student's private school or the pedagogical preferences of the student's parents. *See*

*supra* at 4-5. This is consistent with IDEA, which "does not give parents the authority to dictate the curriculum or insist on a particular methodology." *Pollack*, 2015 WL 1947315, at \*16; *see also Lessard v. Wilton Lyndeborough Coop. Sch. Dist.*, 518 F.3d 18, 30 (1st Cir. 2008) ("[P]arents cannot unilaterally dictate the content of their child's IEP."); *Johnson ex rel. Johnson v. Olathe Dist. Sch. Unified Sch. Dist. No. 233, Special Servs. Div.*, 316 F. Supp. 2d 960, 975 (D. Kan. 2003) (under IDEA, questions of methodology are left to the district). To the extent that students (or their parents) want something different than what BV supplies, the same alternative option—to opt out and privately provide and pay for such services—is available to both secular and religious families. *Baker*, 2024 WL 740443, at \*11.

It is well established that the "*sine qua non* of an equal protection claim" is "dissimilar treatment of persons similarly situated[.]" *Wolfe v. Hill*, No. 8:19-cv-01312-DMG (GJS), 2020 WL 7872127, at \*17 (C.D. Cal. Aug. 31, 2020). That is entirely absent here. Thus, Baker's equal protection claim fails.

## VI.    Neither BV's policies nor the underlying Kansas framework unconstitutionally interferes with parental choices.

Citing *Mahmoud* and *Pierce*, Baker contends the Kansas special education framework unconstitutionally interferes with parental choices by not providing special education services with religious content to parents who want it. Aplt. Br. at 52-53. As discussed *supra* at 14, this argument was not preserved and can be rejected by the Court on that basis alone.

If the Court considers the merits of this argument, it should reject it. It is undisputed that Baker, as S.B.'s mother, has a constitutional right to direct his religious upbringing. But, with respect to public schooling, that right is manifested via the right to opt out. *Wisconsin v. Yoder*, 406 U.S. 205, 213-14 (1972). It does not confer a right to direct how public schools provide instruction. *Leebaert v. Harrington*, 332 F.3d 134, 142 (2d Cir. 2003). Where a public school's curriculum interferes with a parent's right to direct their child's religious upbringing, the remedy is to permit an opt-out from the offending lesson, not to allow the parents to "micromanage" the curriculum and compel the school to provide instruction that is compatible with their religious views. *Mahmoud*, 606 U.S. at 568. Here, the law does not conflict with Baker's right to control S.B.'s religious upbringing; she has the right to opt out—either out of the public provision of special education services (by privately providing them) or out of the special education system entirely (by withdrawing her consent to S.B.'s IEP)—and the law imposes no direct restrictions on her ability to direct S.B.'s religious education. The only thing that the Kansas framework restricts is her ability to dragoon BV personnel into providing religious instruction to her son; but the right to direct the religious upbringing of one's child has never been understood to sweep so broadly.

The fact that BV does not subsidize the provision of religious special education services also does not undermine Baker's constitutional right to direct S.B.'s religious upbringing. Our constitutional order is primarily a system of

negative liberty, under which freedoms are understood as the right to be free from state coercion. *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000). Consequently, there is generally no obligation to subsidize the exercise of even fundamental rights. *United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 212 (2003) ("A legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right.") (cleaned up). The only circumstance in which the Constitution requires the state to subsidize a parent's right to educate their child in a religious private school is when the government has established a general system of public support for private education. *Carson*, 596 U.S. at 768; *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 487 (2020); *Trinity Lutheran*, 582 U.S. at 462. Here, as discussed *supra* 4-5, 28-31, there is no benefit awarded to secular private schools (or to students enrolled at them) that is unavailable to their religious counterparts.

More generally, the circumstances in this case are substantially different from those that were present in *Mahmoud*—and, indeed, those differences highlight the degree to which the relief requested by Baker is extreme and unusual. Unlike Baker, the parents in *Mahmoud* could clearly articulate both the religious beliefs that they held and wished to pass onto their children and specifically how the classroom materials they objected to undermined that effort. *Compare* 606 U.S. at 540-42, 553-54 and *supra* at 5-6, 20-23. Unlike Baker, the parents in *Mahmoud* were seeking clear and concrete relief—the right to opt out of specific lessons involving specific texts—that was also prohibitory rather than mandatory in nature. *Compare* 606 U.S.

36

at 544 and *supra* at 4. Unlike Baker, the parents in *Mahmoud* made a "convincing showing" that the relief they were seeking was needed to protect their religious liberty. *Compare* 606 U.S. at 558-59 and *supra* at 5-6, 20-23.

BV has a neutral policy of general applicability, under which no parent gets to micromanage the content of their child's special education services and those services are provided at a BV facility even when the students are enrolled at a private school or a homeschool, as Kansas law permits. Supp. App. Vol. 2 at 1-2; K.S.A. 72-3462. At most, this imposes an incidental burden on Baker's religion, which is still permissible under *Mahmoud*. 606 U.S. at 564.

Ultimately, the clearest explication of what makes this case distinct from *Mahmoud* comes from Justice Alito himself. With respect to the *Mahmoud* parents, he wrote: "It must be emphasized that what the parents seek here is not the right to micromanage the public school curriculum, but rather to have their children opt out of a particular educational requirement that burdens their well-established right to direct the religious upbringing of their children." 606 U.S. at 568. In contrast, micromanaging BV's special education curriculum—by compelling BV personnel to provide S.B. with special education services containing the (still unspecified) religious content of her choosing—is precisely what Baker is seeking to do. *See* Aplt. Br. at 19-20, 72-73. She wants to force BV to provide religious instruction and she wants to dictate the content of that instruction. No parent, religious or secular, has

the right to demand this, whether under BV's policies, Kansas law, IDEA, or the Constitution.

BV does not believe that "it knows better than [Baker] what S.B. 'needs' religiously or educationally" or that "religious materials serve no educational purpose for reading instruction." Aplt. Br. at 52. But, respectfully, that is not the issue here. Special education services are not intended to provide for all aspects of the child's education, let alone see to the whole panoply of physical and metaphysical human needs. They serve a narrower function, as tools to help address specific educational and developmental deficits. The question is not whether S.B. needs religious instruction or access to religious books and materials in general. The question is whether S.B. must use religious materials to address the specific developmental and educational deficits that would be covered by his (at this point still theoretical) IEP. There is no reason to believe that he does.

## VII.   __The Kansas framework does not impose unconstitutional conditions.__

Baker contends that K.S.A. 72-3463 imposes unconstitutional conditions by providing free special education services "only if the parent renounces religious education." Aplt. Br. at 5-6, 36, 53-57. This argument bears no resemblance to how the Kansas framework or BV's policies actually function.

Under the unconstitutional conditions doctrine, "the government may not require a person to give up a constitutional right in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no

relationship to the property." *Reedy v. Werholtz*, 660 F.3d 1270, 1277 (10th Cir. 2011). "The doctrine only applies if the government places a condition on the exercise of a constitutionally protected right." *Petrella v. Brownback*, 787 F.3d 1242, 1265 (10th Cir. 2015).

Here, neither the Kansas framework nor BV's policies require Baker to foreswear the exercise of any actual constitutional right. Baker retains the right to privately provide S.B. with special education services containing religious elements, just as she remains free to educate him at a religious private school (or a home school) more generally. But—outside of circumstances where the government has opted to subsidize equivalent secular private education,[4] which has not occurred here—she does not have the right to demand that the government subsidize that right. *Am. Library Ass'n*, 539 U.S. at 212. Nor, as discussed *supra* at 28-31, is there a generalized right for parents to customize their child's publicly-provided special education curriculum because she wants that curriculum to contain unspecified religious elements. Simply put, nothing about either the Kansas framework or BV's policies requires Baker to refrain from the exercise of any actual constitutional right in order to receive any public benefit, and, in consequence, she cannot prevail on her unconstitutional conditions claim.

---

[4] *Carson*, 596 U.S. at 768.

39

The cases Baker cites are not to the contrary. In *Sherbert v. Verner*, 374 U.S. 398 (1963), both the constitutional right being exercised (the free-exercise right to refuse to work on the Sabbath) and the government infringement of that right (denial of unemployment benefits to an ex-employee who was fired for refusing to work on the Sabbath) were clear. *Id.* 399-402. Here, in contrast, while the right to direct the religious education of one's child is well established, it is equally well established that—in the absence of the state opting to subsidize private education generally—there is no right to have the government directly provide or pay for such religious instruction. *Contra* Baker's unsupported contention, *Mahmoud* does no "confirm[] that ongoing financial penalties for religious school choice are unconstitutional." Aplt. Br. at 54. The nature of the parents' choice in *Mahmoud*—as an alternative to opting out of certain lessons at public school, they could withdraw their children from public school and privately educate them (606 U.S. at 560-61)—is substantially different from the circumstances Baker complains about. Here, S.B. is already being privately educated. She wants to compel the government to come into the private education environment and provide services with (unspecified) religious content that she would get to dictate. As discussed above, *Trinity Lutheran*, *Espinoza*, and *Carson* are distinguishable because each involved a general public subsidy program that expressly excluded religious institutions from participating. *Carson*, 596 U.S. at 768; *Espinoza*, 591 U.S. at 487; *Trinity Lutheran*, 582 U.S. at 462. Here, in contrast, students at religious private schools get to participate in the public special education

system on exactly the same terms as those enrolled at secular private schools. Supp. App. Vol. 2 at 1-2.

Finally, *Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1 (1993) is distinguishable because there is a categorical difference between a publicly-provided sign language interpreter translating the entire school day for a deaf student enrolled at a Catholic school to enable the student to access the material in the same way the translator would for a student at public school—a fundamentally secular task even if it sometimes involves incidental conveyance of religious content—and demanding that a public school teacher use religious texts and materials to develop specialized instruction centered on the religious content, which is what Baker seeks.

## VIII.  <u>BV is not hostile to religion.</u>

Baker contends that "BV's implementation demonstrates" hostility to religion because "BV has gone beyond merely enforcing K.S.A. 72-3463's prohibition to assert theological and pedagogical authority over Terri's decisions[.]" Aplt. Br. at 51. As discussed above, this is an argument Baker did not raise below. *See supra* at 14-15. Moreover, it is unclear how this claim, even if true, could support the relief Baker seeks, which is a declaration that K.S.A. 72-3463 and its implementing regulation, K.A.R. 91-40-48(c)(2), are unconstitutional. *Id.* at 84-85. If the issue is not the statute itself but BV's allegedly improper *implementation* of the statute, the remedy should be to compel BV to adhere to the statute, not to throw the statutory

baby out with the bathwater and strike down K.S.A. 72-3463. But, in any event, Baker's claims of hostility to religion are without merit.

The alleged hostility identified by Baker is entirely dissimilar to that experienced by the plaintiffs in *Masterpiece Cakeshop,* both circumstance and severity. The issue in *Masterpiece Cakeshop* was that the individual had been denied "a neutral decisionmaker who would give full and fair consideration to his religious objection" due to the hostility of the members of the Colorado Civil Rights Commission. 584 U.S. at 640. That hostility manifested itself in the comments that members of the Commission made on the record during the "formal, public hearings" relating to the claims against the bakery and its proprietor. *Id.* at 634-36. One commissioner described the baker's religious views as "despicable," paired with the failure of any of the other commissioners to object to this rhetoric, which established the hostility. *Id.* at 365-66. The hostility was then confirmed by evidence that the Commission ruled in favor of other bakers who presented conscience-based objections to creating cakes with messages <u>opposed</u> to same-sex marriage. *Id.* at 637-38. Thus, in *Masterpiece Cakeshop*, (1) the hostility was overt, direct and extreme; (2) the relevant statements were by members of the deciding body acting as part of the formal process of evaluating the substance of the underlying administrative action; and (3) there was at least circumstantial evidence suggesting the hostility was outcome-determinative. None of that is true here: (1) the putative hostility is essentially imaginary; (2) the objected-to statements were entirely made during the

course of the litigation (and are mostly arguments of counsel in briefing) rather than in any pre-decision statements by BV; and (3) there is no evidence that the alleged hostility was caused any action that BV directed at Baker.

Baker contends that four statements demonstrate BV's alleged animus: (1) "BV declared that S.B. does not 'need' religious materials for reading"; (2) BV "characterize[ed] [Baker's] description of BV's environment as 'godless' as a 'term of derision rather than a statement of religious belief"; (3) "BV took 'umbrage' at being accurately described as maintaining a religion-free ('godless') environment, suggesting that truthful characterization of its mandatory secular policy is somehow offensive"; and (4) "BV admitted it teaches ideologies but 'not of the religious kind[.]'" Aplt. Br. at 22-23, 39. As Baker herself acknowledges, these statements were all made in the context of this litigation—and in particular in the context of BV's attempt to defend itself against Baker's claims. *Id.* at 34-35. The first three statements come from BV's summary judgment opposition brief. Aplt. App. Vol. 6 at 77, 83.[5] The fourth comes from Schmidt's deposition. Aplt. App. Vol. 2 at 182. Thus, none of the statements were made by BV in a pre-decisional capacity, unlike the statements in *Masterpiece Cakeshop*. Also unlike the circumstance in *Masterpiece Cakeshop*, Baker presents no evidence, direct or circumstantial,

---

[5] The third comes from Baker's characterization of BV's response in her reply brief. Aplt. App. Vol. 6 at 125.

suggesting that there was any causal connection between the views expressed in these statements and the conduct by BV that Baker objects to.

Moreover, the circumstances illuminate the degree to which the statements do not reflect any actual hostility to Baker's religious views. To the extent that the statements from BV's prior briefs seem oppositional to Baker's position, it is because they literally are—they are a response to the legal positions Baker has advanced in this suit. Nothing in *Masterpiece Cakeshop* suggests the obligation to provide a neutral forum prohibits government entities that have been sued from vigorously defending themselves and, in so doing, disputing the positions of the other side.

## IX.    <u>Strict scrutiny does not apply to Baker's claims.</u>

Baker contends that K.S.A. 72-3463 is unconstitutional because "Kansas has no compelling interest in categorical religious exclusion." Aplt. Br. at 50. This argument puts the cart before the horse, because it presumes that strict scrutiny applies to Baker's claims. For the reasons set forth above, the Kansas framework that Baker challenges does not actually burden her Free Exercise rights or her other constitutional rights. Where no fundamental rights are violated, rational basis rather than strict scrutiny applies. *Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008); *KT&G Corp. v. Attorney General of State of Okla.*, 535 F.3d 1114, 1137 (10th Cir. 2008).

44

Nor is this a case, like *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546-47 (1993), in which the state is imposing restrictions on religious conduct but not on comparable secular conduct. As discussed above, the statute does not impose any restrictions on religious conduct by private parties. It does not restrict the ability of people of faith to operate schools. It does not bar individuals from privately providing special education services with any religious content they find appropriate, desirable, or required by their religious convictions. It does not prohibit students enrolled at religious schools from receiving publicly-provided special education services. All it does, as the district court noted (*see* Aplt. App. Vol. 3 at 121), is govern how government employees provide public services, which the government is generally free to do. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022) ("In addition to being private citizens, teachers and coaches are also government employees paid in part to speak on the government's behalf and convey its intended messages."); *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) ("Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services.").

This is particularly true here because, notwithstanding the dismissive backhand Baker gives to this point, it would in fact violate the Establishment Clause for public employees, paid for by and operating under the aegis of a public school district, to participate in religious education or devotional exercises. A public school

cannot provide religious instruction without violating the Establishment Clause. *Herdahl v. Pontotoc Cnty. Sch. Dist.*, 933 F. Supp. 582, 591-98 (N.D. Miss. 1996) (voluntary "Bible class" in public school and direct proselytizing by teacher via showing of videos setting forth religious bases for Christmas and Easter violated Establishment Clause); *see also Sch. Dist. of Abington, Pa. v. Schempp* 374 U.S. 203, 223 (1963) (beginning school day with reading of "verses from the Holy Bible and the recitation of the Lord's Prayer" violated Establishment Clause); *Berger v. Rensselaer Cent. Sch. Corp.*, 982 F.2d 1160, 1168-69 (7th Cir. 1993) (school district allowing distribution of Gideon Bibles on campus during school hours violated Establishment Clause).

What Baker is trying to do is not vindicate her own religious liberty but rather to use the Free Exercise clause as a vehicle to force changes in BV's instructional practices to bring them into conformity with her own religious beliefs. Tenth Circuit precedent forbids this. *Bauchman for Bauchman v. West High Sch.*, 132 F.3d 542, 557 ("[W]hile the Free Exercise clause protects, to a degree, an individual's right to practice her religion within the dictates of her conscience, it does not convene on an individual the right to dictate a school's curricula to conform to her religion.").

The Free Exercise clause does not empower citizens to force the government to act in accordance with their religious beliefs. *Bowen v. Roy*, 476 U.S. 693, 699-700 (1986). The Free Exercise Clause protects Baker's right not to be compelled to participate in special education services that would violate her religious scruples.

Kansas and federal law protects this right by allowing her to opt out of publicly-provided special education services and to provide those services privately, or to opt out of the special education system entirely by withdrawing her consent to special education services. But Free Exercise Clause *does not* empower Baker to demand that her son receive publicly-provided special education services that "conform to her religion." *Bauchman*, 132 F.3d at 557; *see also Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988) ("The crucial word in the constitutional text is 'prohibit': 'For the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.'"), *quoting Sherbert*, 374 U.S. at 412 (Douglas, J., concurring). Her freedom to provide S.B. with religious special education services does not carry with it an obligation on the part of the government to subsidize or facilitate that choice. *Am. Library Ass'n,*, 539 U.S. at 212.

Thus, strict scrutiny does not apply. The operative question, then, is not whether K.S.A. 72-3463 survives strict scrutiny but whether it survives the rational basis test. Here, Kansas's desire to comply with the secularism requirements of IDEA, as outlined above, supplies a rational basis for the Kansas framework. *Hamilton v. City of New York*, 563 F. Supp. 3d 42, 60 (E.D.N.Y. 2021) (desire to "comply with a binding federal regulation … satisfies rational basis").

47

**X.**    **Baker's facial challenge fails.**

In her Statement of the Issues and Summary of Argument—but not, for whatever reason, her Argument section itself—Baker contends that "K.S.A. 72-3463 facially violates the Free Execise Clause[.]" Aplt. Br. at 5, 7-9, 34. As discussed above, her failure to raise this issue in the Argument section operates as a waiver. *Exum*, 389 F.3d at 1133. In any event, Baker cannot satisfy the high bar to make out a facial challenge.

The decision to litigate a First Amendment challenge as a facial rather than an as-applied challenge "comes at a cost." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Such challenges are "hard to win" by design, because "[c]laims of facial invalidity often rest on speculation about the law's coverage and its future enforcement" and "'facial challenges threaten to short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways." *Id.*, *quoting Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008). To prevail on First Amendment facial challenge, a plaintiff must demonstrate that "a substantial number of the law's applications are unconstitutional" and that "the law's unconstitutional applications substantially outweigh its constitutional ones." 603 U.S. at 723 (cleaned up). Baker's arguments do not meet this standard.

The constitutional applications of K.S.A. 72-3463 substantially outweigh any unconstitutional ones. As the Kansas courts have recognized, the statute merely

governs how public school personnel provide services under the statute and does not proscribe the conduct of parents or private educators at all. *Baker*, 2024 WL 740443, at *11. And what it seeks to prevent is conduct that, as discussed *supra* at 45-46, would plainly operate as an Establishment Clause violation: public school employees, in the course of their employment, providing religious instruction. Baker's arguments to the contrary appear to be premised on the incorrect understanding that the statute restricts the conduct of parents or other third parties. Aplt. Br. at 7-9. Since this is not the case, there is no requirement that parents "secularize their child's education before a therapist can appear." *Id.* at 8-9. They can privately provide religious special education services and can make use of publicly-provided special education services while otherwise enrolling their children in a religious school. They simply cannot force public employees into providing religious instruction under the guise of providing special education services. Even if properly before this Court, Baker's facial challenge fails.

## XI.    **IDEA does not require the services Baker demands.**

Another argument that Baker presents in her Statement of the Issues and Summary of Argument but omits from her actual Argument section is the contention that the Kansas framework and BV's policies violate IDEA by failing to require that IEPs be customized to the child's private school curriculum. Aplt. Br. at 6, 36-37.

Again, the Court can treat this argument as waived, at least with respect to the merits.[6] *Exum*, 389 F.3d at 1133. In any event, the Court should reject this argument.

As discussed *supra* at 28-31, it is well established that with respect to publicly-provided special education services, curricular decisions are left to the school district and, while such services are individualized for each student, that individualization relates to the child's learning and developmental needs, not to the curriculum of whatever private school he may be enrolled in or to his parents' educational, aesthetic, or religious preferences. *L.B. ex rel. K.B. v. Nebo School Dist.*, 379 F.3d 966 (10th Cir. 2004) does not hold otherwise. *Nebo* did not involve publicly-provided special education services at all, much less whether such services would need to be customized to match a private school curriculum. Rather, the dispute concerned whether the school district's proposal, which the child's parents had rejected, complied with IDEA's "least restrictive environment" requirement and whether, if not, the parents were entitled to be reimbursed for the private special education services they had been providing instead. *Id.* at 976-79. Moreover, this Court made clear that questions relating to LRE are fact- and context-specific and that it was not announcing a categorical rule. *Id.* at 978 n.17. And unlike Baker, the

---

[6] Baker does briefly reference it as part of her standing argument. Aplt. Br. at 49.

parents in *Nebo* participated in the IEP process and made specific requests to the district. *Id.* at 970-71.

## **<u>CONCLUSION</u>**

For the reasons stated herein, the district court's judgment should be affirmed.

Respectfully submitted,

SPENCER FANE LLP

/s/ Stephanie Lovett-Bowman

| | |
|---|---|
| W. Joseph Hatley | KS #12929 |
| Stephanie Lovett-Bowman | KS #24842 |
| Angus W. Dwyer | KS #26995 |

jhatley@spencerfane.com
slovettbowman@spencerfane.com
adwyer@spencerfane.com
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100 – Phone
(816) 474-3216 – Fax

ATTORNEYS FOR APPELLEE
MARK SCHMIDT IN HIS OFFICIAL
CAPACITY FOR BLUE VALLEY U.S.D. 229

## **CERTIFICATE OF COMPLIANCE**

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it is proportionally spaced and contains 12,768 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). Undersigned counsel relied on a word processor to obtain the count, Microsoft Word for Windows. I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

Date: December 17, 2025.

/s/ Stephanie Lovett-Bowman
Attorney for Appellee Mark Schmidt in his
official capacity for Blue Valley U.S.D. 229

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that I submitted on December 17, 2025, the foregoing Brief in digital format to the Clerk of the Court via the Court's ECF system.  As to this submission, I certify that:

1.      All required privacy redactions have been made;

2.      If required to file additional hard copies, they will be an exact copy of

this ECF submission; and

3.      This brief has been scanned for viruses with Microsoft Forefront Client

Security, Client Version 1.5.1996.0, and according to the program, is free of viruses.

/s/ Stephanie Lovett-Bowman
Attorney for Respondent/Appellee

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that, on December 17, 2025, the above and foregoing was filed with the Court's ECF system for automatic distribution to counsel of record.

/s/ Stephanie Lovett-Bowman
Attorney for Respondent/Appellee

## ADDENDUM OF MARK SCHMIDT IN HIS OFFICIAL CAPACITY FOR BLUE VALLEY U.S.D. 229

Doc. 109, Memorandum and Order, 6/25/2024…………Blue Valley Addendum-1

## In the United States District Court
## for the District of Kansas

———————

Case No. 23-cv-04022-TC-TJJ

———————

Terri E. Baker, et al.,

*Plaintiffs*

v.

Randall D. Watson, et al.,

*Defendants*

———————

## MEMORANDUM AND ORDER

Terri Baker, CarrieAnn Baumgarten, and two homeschools sued Randall Watson, Kansas Commissioner of Education, and Mark Schmidt, Assistant Superintendent of Special Education for Blue Valley School District. Doc. 13. Plaintiffs seek special education benefits, *id.*, and request a preliminary injunction guaranteeing as much, Doc. 21. Watson moves to dismiss the claims against him. Doc. 24. Baker also appealed a state administrative decision, and Schmidt seeks judgment on the administrative record for that claim. Doc. 65. For the following reasons, Watson's motion to dismiss, Doc. 23, and Schmidt's motion for judgment on the administrative record, Doc. 65, are granted, and Plaintiffs' motion for a preliminary injunction, Doc. 21, is denied.

## I

## A

There are a variety of requests pending. Each has its unique standard.

**1.** A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the

**Blue Valley Addendum-2**

complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*; *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. ---, No. 22-842, 2024 WL 2751216, at *9 (U.S. May 30, 2024) (rejecting a conclusion reached only "by taking the allegations in isolation and failing to draw reasonable inferences in the [plaintiff's] favor").

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

Ordinarily, a motion to dismiss is decided on the pleadings alone. But "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

**2.** A party may also move to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). There are, generally speaking, two ways to

**Blue Valley Addendum-2**

challenge subject-matter jurisdiction, one being facial and the other being factual. *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022). A facial challenge accepts the facts in the complaint as true but argues they fail to state a basis for jurisdiction, while a factual attack contests the validity of jurisdictional facts. *Id.* Either way, "[t]he objection that a federal court lacks subject-matter jurisdiction … may be raised … at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1) and 12(h)(3)). An objection to a plaintiff's standing is an objection that a federal court lacks subject-matter jurisdiction. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 868 (10th Cir. 2020). Jurisdictional questions may be entwined with the merits of a case. If they are, then a court must convert a putative Rule 12(b)(1) motion into a Rule 12(b)(6) motion or a motion for summary judgment. *Kerr v. Polis*, 20 F.4th 686, 700 (10th Cir. 2021).

**3.** A preliminary injunction is an extraordinary remedy, with "the limited purpose…to preserve the relative positions of the parties until a trial on the merits can be held." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citation and quotation marks omitted). Under Rule 65 of the Federal Rules of Civil Procedure, the party seeking a preliminary injunction must show four things: that "they are substantially likely to succeed on the merits of their claims," "they will suffer irreparable harm if the injunction is denied," "their threatened injury without the injunction outweighs any harm to the party opposing the injunction," and "the injunction, if issued, is not adverse to the public interest." *Harmon v. City of Norman*, 981 F.3d 1141, 1146 (10th Cir. 2020) (citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018)).

A preliminary injunction is never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Thus even a standard preliminary injunction—one that simply preserves the position of the parties pending trial—is extraordinary. *Id.* Those seeking to mandate specific action rather than prohibit it, change the status quo, or grant all the relief a victorious movant could obtain at trial are even more disfavored. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). Movants seeking a disfavored injunction must make a strong showing of likely success on the merits and a balance of harms that tilts in their favor. *Id.*; *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc) (per curiam).

Blue Valley Addendum-4

**B**

    Plaintiffs are Terri Baker, who sues as next friend of her son, S.B.; CarrieAnn Baumgarten; and a pair of Kansas homeschools, Baumgarten Academy and Heritage House. Doc. 13 at ¶¶ 42–46.[1] All four plaintiffs challenge aspects of Kansas's statutory and regulatory framework for special education services, claiming they are inconsistent with the First and Fourteenth Amendments. There are two defendants. Defendant Randall Watson is the Kansas Commissioner of Education. *Id.* at ¶ 32. Defendant Mark Schmidt is Assistant Superintendent of Special Education for Blue Valley School District. *Id.* at ¶ 33.

    **1.** Kansas receives federal funding for education, as relevant here, pursuant to the Individuals with Disabilities Education Act (IDEA). Doc. 32 at 2–5; 20 U.S.C. § 1400, *et seq.* That funding comes with certain obligations. Doc. 32 at 2–5. To qualify for IDEA funding, states must, among other things, give children with disabilities a free and appropriate public education. 20 U.S.C. § 1412(a)(1)(A). So school personnel work with parents to develop individualized education programs for students with special needs.[2] *Honig v. Doe*, 484 U.S. 305, 311 (1988). These IEPs set out a child's present educational performance, establish goals, and describe the "specially designed instruction and services," including educational accommodations, necessary to meet those identified goals. *Id.*; *see also M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012) (describing IEPs in detail).

    Kansas enforces its IDEA obligations through state statutes and regulations. *See* Kan. Stat. Ann. § 72-3403 *et seq.*; K.A.R. 91-40-48. Under Kansas law, IEPs follow a child wherever he or she is educated. The parent of a child with an IEP must "require such child to attend school to receive the special education and related services which are indicated on the child's IEP or … provide for such services privately." Kan. Stat. Ann. § 72-3421. And "every school district shall provide special education services" to in-district children at private, nonprofit elementary or secondary schools upon request of a parent or guardian. Kan. Stat. Ann. § 72-3462.

---

[1] All document citations are to the document and page number assigned in the CM/ECF system.

[2] In Kansas, "exceptional children." Kan. Stat. Ann. § 72-3404(g).

Blue Valley Addendum-4

Parents of Kansas children with IEPs must ensure that someone provides their child's IEP services. *See* Kan. Stat. Ann. § 72-3421. They can comply with this mandate in several ways. A parent can provide services privately, at their own expense. *Id.* They can send their child to a public school and accept the public school's services. *Id.* Or they can choose a private school—in which case the public school district will help provide the IEP. Kan. Stat. Ann. § 72-3462.

This assistance can take several forms. A district may send a state employee to the private school, reimburse the private school for services rendered by a private employee, or bring the child to the public school to receive services. Kan. Stat. Ann. § 72-3462; *see also* K.A.R. 91-40-48(b). Local school districts administer IEPs. Kan. Stat. Ann. § 72-3429. So a student's public school district helps decide which services to provide and how to provide them, even when the student is educated privately. *Id.*

Kansas controls the ideological nature of its IEP services. State law provides that "[n]o special education services shall be provided in connection with religious courses, devotional exercises, religious training, or any other religious activity." Kan. Stat. Ann. § 72-3463. A related regulation, K.A.R. 91-40-48(c)(2), requires that special education services "provided to exceptional children enrolled in private schools [be] provided in a secular and nonideological manner."

**2.** S.B. has an IEP from Blue Valley School District, and Baumgarten's children have IEPs from Olathe School District. Doc. 13 at ¶¶ 43, 45. Although their IEPs are from Kansas public school districts, S.B. is homeschooled at Heritage House and Baumgarten's children are homeschooled at Baumgarten Academy. *Id.* at ¶ 45; Doc. 24 at 7–8.

In theory, S.B. and Baumgarten's children are eligible for state-funded services to implement their IEPs even though they attend homeschools. Kan. Stat. Ann. § 72-3462. But while possible in theory, Plaintiffs contend it is practically impossible for them to access state-funded special education services because Heritage House and Baumgarten Academy use a religious curriculum. Doc. 13 at 9–10.

Baker raised similar issues in a special education due process complaint filed with the Kansas Office of Administrative Hearings. Doc. 13 at ¶ 159. Her complaint alleged "that S.B. was improperly denied FAPE because Blue Valley unilaterally, and without prior notice or

opportunity to be heard, repeatedly removed S.B. from enrollment and now refuses to allow [him] to be enrolled even though [he] has an I.E.P. generated by Blue Valley that has not terminated." *Id.* at ¶ 169. A hearing officer dismissed Baker's complaint, *id.* at ¶ 162, after finding that the complaint was impermissibly vague. Doc. 66-5 at 2 (stating that the decision "does not rule on any issue other than the sufficiency"). Baker appealed the hearing officer's decision to an administrative law judge, but the ALJ affirmed the hearing officer's decision. Doc. 66-7 at 4 (referencing a parent's obligation to file an adequate complaint). At both stages of the administrative process, Kansas officials decided only procedural questions about the sufficiency of Baker's complaint. The ALJ specifically noted Baker's attempt to raise constitutional questions in the administrative process and refused to rule on those issues. *Id.*

**3.** Plaintiffs sued to prevent Defendants from enforcing the ideological restrictions contained in Section 72-3463 and K.A.R. 91-40-48 *et seq.* Doc. 1. They also amended their complaint to request reversal of the state-level administrative decision. Doc. 13 at ¶ 189.

The complaint, as amended, contains seven counts. Speaking broadly, Plaintiffs allege that the Kansas rules contravene a variety of First Amendment and related constitutional concepts. Count I alleges that Defendants violated the Free Exercise Clause of the First Amendment by excluding Plaintiffs from "[o]therwise [a]vailable [g]overnment [b]enefits." Doc. 13 at 26. Count II alleges a Free Exercise Clause violation based on "[c]ategorical [e]xemptions," meaning that Defendants treat secular schools more favorably than religious ones. *Id.* at ¶ 114. Count III alleges a violation of the Free Speech Clause, arguing that Kansas law both "mute[s] speech" and "compels a particular kind of speech odious to the plaintiffs"—that is, forbids religious speech and requires secular speech. *Id.* at ¶ 120. Count IV alleges a violation of the Equal Protection Clause of the Fourteenth Amendment, because "[t]he religious activities / use prohibitions of Kansas are not neutral and generally applicable." *Id.* at ¶ 127. Count V returns to the Free Exercise Clause and argues that Defendants impose unconstitutional conditions on religious exercise. *Id.* at 33. These conditions are, in Plaintiffs' view, a consequence of Kansas's alleged prohibition on the religious (but not secular) use of public special education benefits. *See id.*; Kan. Stat. Ann. § 72-3463. Count VI is another Free Exercise Clause claim, asserting that Defendants interfere with parents' ability to control the religious education of their children. *See* Doc. 13 at ¶

**Blue Valley Addendum-7**

140. Finally, Count VII asks that a decision issued pursuant to a state-level administrative process be reversed. *Id.* at 35.

After Plaintiffs amended their complaint to add Count VII, Watson moved to dismiss. Doc. 23. He argues that he has Eleventh Amendment immunity, that Plaintiffs failed to explain how he violated their rights, and that Plaintiffs lack standing, among other things. Doc. 24. Schmidt requests judgment on the administrative record with respect to Count VII, the appeal arising from Baker's state-level administrative decision. Doc. 66 at 1. Schmidt and Plaintiffs apparently agree that Count VII can be decided based on the existing record. *See* Doc. 66 at 5; Doc. 78 at 1.

Plaintiffs also seek a preliminary injunction. Doc. 21. That request rests on their First Amendment claims. *Id.* at 1–2. As a result of Defendants' alleged First Amendment violations, Plaintiffs say, Defendants should preliminarily be enjoined from enforcing K.S.A. § 72-3463 and K.A.R 91-40-48(b), (c), and (e). *Id.* at 15. Both Watson and Schmidt oppose that motion. Doc. 31; Doc. 32.

## II

Five motions are pending. They are addressed in the following order. First, Plaintiffs' motion to supplement, Doc. 104, is granted. Then Watson's motion to dismiss the supplemented complaint, Doc. 23, is granted and Plaintiffs' motion for summary judgment against him, Doc. 106, is denied as moot. Next, Plaintiffs' motion for a preliminary injunction, Doc. 21, is denied because they are not likely to succeed on the merits of their claims. Finally, Schmidt requests judgment on the administrative record as to Plaintiffs' Count VII, Doc. 65, and that motion is granted.

## A

Plaintiffs moved to supplement their amended complaint. Doc. 104. That motion was filed after requesting a preliminary injunction, after Watson moved to dismiss, and after Schmidt moved for judgment on the administrative record. The amended complaint discusses a dispute over S.B.'s enrollment in a Blue Valley school. *See* Doc. 13 at ¶¶ 6–8. Plaintiffs want to supplement that portion of the complaint with "facts about … Blue Valley's refusal to enroll S.B. in the 2023-2024 and 2024-2025 school years." Doc. 104 at 1. In effect, their supplement would expand the temporal scope of their claim against Schmidt.

**Blue Valley Addendum-7**

Watson does not oppose the supplement, so long as he is not required to re-file his pending motion to dismiss. *See* Doc. 105 (responding to Doc. 104 and referencing Doc. 23). And Schmidt has not affirmatively indicated that he opposes the supplement.

Supplements like the one proposed by Plaintiffs are governed by Federal Rule of Civil Procedure 15(d). That rule enables a court "on just terms" to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A court may do so even if "the original pleading is defective in stating a claim or defense." *Id.*

Rule 15(d) supplements typically serve judicial economy, because they avoid less efficient means of consolidating claims. For example, a party might instead "institute another action and move for consolidation under Rule 42(a) in order to litigate both claims in the same suit." 6A Wright & Miller, *Federal Practice and Procedure* § 1506 (3rd ed. 1998); *see also Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1187 (10th Cir. 2015). These maneuvers waste time, encouraging the use of Rule 15(d) to promote a just, speedy, and inexpensive determination of the merits. So courts often grant such requests, considering factors like "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). And since courts must permit supplements only "on just terms," courts may avoid requiring parties to re-file existing motions. Fed. R. Civ. P. 15(d); *TIG Glob., LLC v. PC Specialists, Inc.*, No. 10-CV-00307, 2011 WL 5244409, at *3 (D. Colo. Nov. 3, 2011).

Plaintiffs' motion to supplement is granted. The contents of the supplement are considered. This does not render moot any of the defendants' pending motions. *See* Fed. R. Civ. P. 15(d).

## B

Watson seeks dismissal of all defendants' claims based on standing.[3] Doc. 23. He is correct: Baumgarten, Heritage House, and Baumgarten Academy fail to allege an injury-in-fact and Baker, even accepting that she properly alleges an injury-in-fact, cannot connect her alleged injuries to Watson. As a result, Watson's motion is granted.

### 1

Plaintiffs must establish that they have standing to assert a claim. *See Sierra Club v. United States Env't Prot. Agency*, 964 F.3d 882, 888 (10th Cir. 2020); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. ----, No. 23-235, 2024 WL 2964140, at *6 (U.S. June 13, 2024). This requirement flows from Article III of the Constitution, which "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A case or controversy—that is, standing—exists when a plaintiff has a "personal stake in the case." *Id.* (internal quotation marks omitted). This rule, as the Supreme Court has repeatedly put it, "requires a plaintiff to first answer a basic question: 'What's it to you?'" *All. For Hippocratic Med.*, 2024 WL 2964140, at *5 (citation and internal quotation marks omitted); *see also TransUnion LLC*, 594 U.S. at 423.

Plaintiffs answer that question, and thus carry their burden to establish standing, when they prove that they suffered an injury-in-fact which is fairly traceable to the defendant's actions and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Not all alleged injuries suffice as "injury-in-fact." An injury-in-fact must be "concrete," "particularized," and "actual or imminent." *TransUnion LLC*, 594 U.S. at 423; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (clarifying that these requirements are independent). The other two requirements, causation and redressability, often blend into a single inquiry. *See All. For Hippocratic Med.*, 2024 WL 2964140, at *6 (citing *Sprint Communications Co. v.*

---

[3] Plaintiffs contend Watson's motion to dismiss, Doc. 23, is untimely, Doc. 25 at 1. It is not. Jurisdictional deficiencies can be raised at any time. Fed. R. Civ. P. 12(h)(3); *Mires v. United States*, 466 F.3d 1208, 1211 (10th Cir. 2006) ("[A] litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action—even on appeal.") (citation and internal quotation marks omitted).

*APCC Services, Inc.*, 554 U.S. 269, 288 (2008)). They do so because "[i]f a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *Id.* Finally, even if a plaintiff has standing to assert one claim, he or she must satisfy the standing inquiry as to each claim separately. *Shields v. Pro. Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 827 (10th Cir. 2022) (explaining that courts in the Tenth Circuit determine standing on a claim-by-claim basis).

**2**

The homeschool plaintiffs—Heritage House and Baumgarten Academy—lack standing to sue either defendant. Students, not their schools, are entitled to special education benefits. *See* Kan. Stat. Ann. § 72-3411 (describing school boards' powers with respect to students); Kan. Stat. Ann. § 72-3411 (explaining how a public school can satisfy its duty to *provide* special education services); *cf. Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007) (concluding that because "[p]arents enjoy rights under IDEA" they "they are … entitled to prosecute IDEA claims on their own behalf"); *Fowler v. Unified Sch. Dist. No. 259, Sedgwick Cnty.*, 128 F.3d 1431, 1434 (10th Cir. 1997) (contemplating a district's obligation under IDEA "to pay for the full cost of *the student's education*" and "to make special education services available *to … student*[s]") (emphasis added). If schools have a right to benefits under the Kansas scheme independent of students' rights, then Plaintiffs have not identified the source of that right. *See* Doc. 1 at ¶ 23. So the homeschools cannot argue that they have been denied benefits.

And to the extent that the homeschools claim they cannot "provide a general education curriculum while having special needs and related services provided in connection with their curriculum," Doc. 13 at ¶ 46, they assert a speculative injury. They do not allege that any of the challenged provisions will be, or have been, enforced against them by these defendants. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014). Nor do they establish an injury based on unconstitutional conditions. Even if the homeschools scrubbed their curriculum of all religious references, they would not necessarily receive special education services. IEPs are provided to students, not their schools, so any benefit follows the student rather than the school. *See* Kan. Stat. Ann. § 72-3421 (referring to a "child's IEP"); Kan. Stat. Ann. § 72-3429 (noting that, with exceptions "each agency shall have an individualized education program in effect for each exceptional child"). Thus,

the homeschools' theory of injury-in-fact depends on choices made by students (who may enroll), public schools (who decide whether and how to provide benefits), and parents (who also decide whether to provide benefits). This speculative chain of possibilities does not reveal a concrete injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

Similar issues would deny the homeschools standing even if one assumes that they suffer an injury-in-fact. The homeschools' theory of injury runs through their students' private decisions. *See* Doc. 13 at ¶ 46. Specifically, the homeschools imply that they cannot open their doors to students with disabilities because those students could not "hav[e] special needs and related services provided in connection with their [religious] curriculum." *Id.* If students with disabilities attend the homeschools despite that restriction, then the schools are not injured; the challenged restriction has had no effect. And if students with disabilities choose not to attend the homeschools, Plaintiffs must do more to link those choices with Watson's abstract authority over the Kansas Department of Education. *See Clapper*, 568 U.S. at 415. In short, the homeschool plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416. When they do so, "[a]ny ongoing injuries that [they] are suffering are not fairly traceable" to Watson. *Id.*; *see also N. Laramie Range All. v. FERC*, 733 F.3d 1030, 1038 (10th Cir. 2013) (concluding that a plaintiff did not satisfy its burden on traceability when it "assumed a connection" between several conditional events).

### 3

Baumgarten also lacks standing to sue either defendant. Her children have IEPs from Olathe School District and attend Baumgarten Academy. Doc. 13 at ¶ 45. Neither Baumgarten nor her children are alleged to have any connection to any Blue Valley school. *Id.* Despite that, all of Plaintiffs' specific allegations, to the extent that they make such allegations, refer only to Blue Valley. *See generally* Doc. 13.

Thus, Plaintiffs do not allege (or appear capable of alleging) that either defendant denied Baumgarten any services to which she was entitled. *Cf. Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) (recognizing that someone who is actually denied a government benefit suffers a constitutionally cognizable injury). Schmidt is a Blue Valley employee who has nothing to do with Olathe School District.

Doc. 13 at ¶ 33. And Plaintiffs do not explain what Watson did in the context of Baumgarten's children or Olathe School District. Nor do Plaintiffs allege that any statute has been (or could be) enforced against Baumgarten. *Driehaus*, 573 U.S. at 158–59. So her only injury is one shared by many people: A statute exists, and she believes that it is unconstitutional. Such allegations do not state an injury-in-fact. *Carney v. Adams*, 592 U.S. 53, 58 (2020) ("[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'"); *Am. Humanist Ass'n, Inc. v. Douglas Cnty. Sch. Dist. RE-1*, 859 F.3d 1243, 1247 (10th Cir. 2017).

4

Baker lacks standing to sue Watson. She alleges that she was denied a generally available public benefit—public special-education services for her son—because she wanted to use that benefit in a religious context. See Doc. 13 at ¶¶ 16–17; 97–117; 126–131. She lacks standing because although Plaintiffs adequately describe an injury-in-fact, that injury is not traceable to Watson.

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012). A plaintiff who seeks prospective relief must demonstrate a "real or immediate threat that [they] will be wronged again." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 111 (1983). And the threat of a constitutional violation, without more, is insufficient. Plaintiffs must also "identify a personal injury suffered by them as a consequence of the alleged constitutional error." *Awad*, 670 F.3d at 1122 (citation omitted).

Baker identifies a personal injury. She claims that she was denied state-provided special education services because of her religious beliefs. Doc. 13 at ¶¶ 16–17. Her son, S.B., has an IEP and may therefore be eligible for such services, even though he attends a private school. Doc. 13 at ¶¶ 42–45; *see* Kan. Stat. Ann. § 72-3462 (explaining that school districts will provide services "upon request of a parent or guardian of any [eligible] child"). But Blue Valley refused to do so: it "has denied S.B. special needs and related services because it has conditioned those services upon unconstitutional conditions." Doc. 13 at ¶ 16 (emphasis added). By "unconstitutional conditions," Baker means K.S.A. § 72-3463, which limits the religious nature of special education

services. *See id.* at ¶¶ 103–04. In short, then, Baker alleges that Blue Valley enforced Section 72-3463 to deny S.B. a benefit. This is an injury-in-fact, since "the impermissible denial of a governmental benefit is a constitutionally cognizable injury." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606–07 (2013).

Yet injury-in-fact does not itself create standing. *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, 100 F.4th 1251, 1262 (10th Cir. 2024). An injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 759 (10th Cir. 2023) (citation omitted); *see also United States v. Windsor*, 570 U.S. 744, 757 (2013). And Baker cannot trace her injury to Watson.

She alleges that S.B. was injured when Blue Valley denied him special education benefits. Doc. 13 at ¶ 16. And she traces this injury to Watson by pointing only to Watson's abstract authority to supervise schools. For instance, she notes that "Watson's disjointed argument does not contend that [the Department] has no connections to the K.A.R. regulations, funding, or the interpretation of regulations and statues that schools (agencies) must follow." Doc. 25 at 3. In other words, Watson has something to do with local schools, so he can be held responsible for their actions. These allegations attempt to make Watson disprove traceability as part of the standing inquiry. But Watson bears no burden when it comes to standing; it is Baker who must demonstrate through factual allegations that her injury is traceable to Watson's acts or omissions. *See Awad*, 670 F.3d at 1120 (confirming that standing is a plaintiff's burden). She cannot simply conclude that because Watson has authority, he must have exercised that authority in her case and in a way that caused her injury. *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) ("If speculative inferences are necessary to connect a plaintiff's injury to the challenged action, [a plaintiff's traceability] burden has not been met.") (cleaned up).

Baker also argues that her injury is traceable to Watson because the Department "states it publishes a Handbook to provide guidance, resources and supports necessary for those professionals who work to improve results for exceptional children." Doc. 25 at 4 (internal quotation marks omitted). She then concludes that "[s]chools, including Blue Valley … must adhere to the [Department's] regulations as interpreted by [it] in its guidelines." *Id.* These sweeping connections are once again too attenuated to satisfy the traceability injury. That Watson

could exercise authority over Blue Valley does not mean that he has done so—nor, more importantly, that he has done so in this case and in a way that has to injured Baker. Since Baker cannot trace her injury to Watson, she lacks standing to sue him.[4]

*        *        *

None of the plaintiffs have standing to sue Watson. The home-school plaintiffs cannot demonstrate that they have suffered an injury in fact, or that any such injury would be traceable to Watson. *See* Section II.B.2, *supra*. Neither can Baumgarten. *See* Section II.B.3, *supra*. And although only Watson (and not Schmidt) moved to dismiss, Doc. 23, the homeschools' and Baumgarten's standing problems are broad and obvious. Those plaintiffs allege no adequate injury in fact and could not trace any such injury to either of Defendants. As a result, their claims against both defendants are dismissed. *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012) (discussing a court's obligation to raise standing issues sua sponte). The same is not true of Baker. She pled an adequate injury in fact, just not one that she could trace to Watson. *See* Section II.B.4, *supra*. That means she fails to satisfy the traceability inquiry, and thus that Watson's motion to dismiss, Doc. 23, must be granted. But because Baker does not run into as obvious a standing issue as the other Plaintiffs, the question of her standing to sue Schmidt is not raised sua sponte.

**C**

The only remaining claims in this suit are Baker's claims against Schmidt. Relying on First Amendment principles,[5] she moves for a preliminary injunction that would enjoin Schmidt from continuing to

---

[4] Plaintiffs filed a motion for summary judgment against Watson, Doc. 106, while the motion to dismiss was pending. That motion is denied as moot because Plaintiffs fail to state a claim against Watson. *Ruiz v. Lavery*, 853 F. App'x 314, 316 n.3 (10th Cir. 2021) (dismissing a motion for summary judgment as moot after finding that the plaintiff failed to state a claim for relief).

[5] Count IV in Baker's complaint alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. Doc. 13 at ¶ 32. She does not mention it in her motion for a preliminary injunction. *See* Doc. 21. Accordingly, the question whether it might justify an injunction is not considered.

14

enforce K.S.A. § 72-3463 and K.A.R 91-40-48(b), (c), and (e).[6] Doc. 21 at 15. That request is denied. Of the six constitutional claims she makes, she lacks standing to pursue two of them, Counts III and VI. And she is unlikely to succeed on the merits of the remaining constitutional claims, Counts I, II, and V.

1

Baker requests a preliminary injunction barring Schmidt from enforcing K.S.A. § 72-3463 and K.A.R. 91-40-48(b), (c), and (e). Schmidt argues that Baker lacks standing to seek that injunction. Doc. 31 at 3; Doc. 32 at 14. Baker has standing to seek an injunction from Schmidt on Counts I, II, and V, but not Counts III and VI.

**a.** Start with Counts I, II, and V. These claims overlap significantly and allege that Baker was denied a benefit on constitutionally suspect grounds. Specifically, Baker says, Schmidt applied Kansas's law and concluded that S.B. was ineligible for special education benefits. Thus, Blue Valley allegedly denied Baker and S.B. special education services. Doc. 13 at ¶ 16. At this stage, that allegation is sufficient to state an injury-in-fact. *See* Section II.B.4, *supra* (analyzing this argument for injury-in-fact as asserted against Watson); *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012).

Schmidt contends that Baker's "bald, perfunctory allegation [does not] satisfy Article III standing" because it "is merely a statement that Blue Valley has affirmed it complies with applicable law." Doc. 32 at 15. But Baker alleges that she already sought a benefit, which was withheld because of Section 72-3463 and related provisions. Doc. 13 at ¶ 16. While a mere expression of a defendant's ongoing willingness to comply with the law might not create a concrete injury, actual enforcement—which Baker alleges—does. *See Summers v. Earth Island Inst.*, 555

---

[6] Injunctions that would mandate specific action rather than prohibit it, change the status quo, or grant all the relief a victorious movant could obtain at trial are disfavored. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). Movants seeking a disfavored injunction must make a strong showing of likely success on the merits and a balance of harms that tilts in their favor. *Id.* It is not necessary to decide which standard applies to Baker's request, because she cannot succeed even under the ordinary standard. *See id.* at 797–98 (declining to consider whether the ordinary or heightened standard would apply).

15

U.S. 488, 496 (2009) (noting that concrete plans can establish an im-
minent injury); *cf. Baker v. USD 229 Blue Valley*, 979 F.3d 866, 875 (10th
Cir. 2020) (concluding that a plaintiff's "'some day' intention" did not
amount to injury-in-fact).

The other standing requirements are satisfied too. Baker can trace
her alleged injury to Schmidt. She claims that he "has communicated
to Terri Baker that 'Blue Valley will not make FAPE available to [S.B.]
during his religious training and religious activities irrespective of
whether [S.B.] attends public, homeschooling, or private schooling.'"
Doc. 13 at ¶ 50 (alterations in original). In other words, she claims that
he imposed—or at least ratified—her alleged injury. This role in caus-
ing her injury means that an injunction confining him to constitutional
criteria, rather than Kansas's allegedly unlawful criteria, would redress
Baker's injury. *See Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 903
(10th Cir. 2012) ("So long as the plaintiff faces a credible threat of
enforcement, redressability is generally not an obstacle.").

Schmidt claims that he is not actually bound to enforce the chal-
lenged laws. Doc. 32 at 15. But whether that is his role or not, Baker
pled that he has in fact enforced the challenged provisions. Doc. 13 at
¶¶ 16, 50. At this stage, that is enough. *See Petrella*, 697 F.3d at 1292.

**b.** Although Baker has standing to seek a preliminary injunction as
to Counts I, II, and V, she alleges no injury-in-fact that would permit
her to seek one as to Counts III and VI. To the extent that her request
depends on Counts III and VI, it is denied.[7]

Baker lacks standing to assert Count III, which alleges a series of
Free Speech Clause violations. She points to K.A.R. 91-40-48(c)(2),
which requires that special education services "provided to exceptional
children enrolled in private schools [be] provided in a secular and

---

[7] A court could stop there, except "standing is a question of justiciability that
implicates [a] court's jurisdiction." *United States v. Ramos*, 695 F.3d 1035, 1046
(10th Cir. 2012) (quotation marks and internal alterations omitted). So
"where the record reveals a colorable standing issue," a court must "under-
take an independent examination (sua sponte if necessary) of that issue." *Id.*;
*Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 (10th
Cir. 2021) (noting that courts in the Tenth Circuit "address standing on a
claim-by-claim basis"). Baker lacks standing to assert Counts III and VI,
meaning that jurisdiction over those claims is lacking and they must be dis-
missed. *Ramos*, 933 F.3d at 813.

16

nonideological manner." In Baker's view, this regulation "mute[s] speech" and "compels a particular kind of speech odious to the plaintiffs." Doc. 13 at ¶ 120.

Set aside the question whether Kansas forces parents whose children receive special education benefits to speak. Even if that were true, Baker has not been injured. She alleges no threat of enforcement under the challenged regulation—nor could she. She does not provide the services that could be subject to Section 72-3463. Doc. 13 at ¶ 16.

Of course, even "the threatened enforcement of a law" can create an Article III injury. *Driehaus*, 573 U.S. at 158–59. So perhaps Baker means that she is deterred by her fear of potential enforcement. But even then, her allegations do not establish that she has standing. Baker, like any plaintiff whose injury stems from the threat of enforcement, must also allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* Baker does not adequately allege this with respect to Count III. Doc. 13 at ¶ 16.

Baker also lacks standing to assert Count VI, which alleges that "[b]y prohibiting the use of otherwise generally available public funding for special education and related services … Defendants have interfered with the plaintiffs' right to direct the religious upbringing of their children." Doc. 13 at ¶ 142. Nothing in Kansas's framework for special education services regulates Baker's ability to raise her children. As explained, the framework governs special education services and the people who provide them. And even if Kansas's framework did operate as Baker suggests, she has not alleged that it will be enforced against her. *See Driehaus*, 573 U.S. at 158–59. Accordingly, she lacks standing to assert this claim.

### 2

Baker contends that she is entitled to an injunction because Kansas's "scheme violate[s] [her] First Amendment rights." Doc. 21 at 2–3. That request is denied because she has not shown that she is likely to succeed on the merits of her remaining First Amendment claims.

First, Baker makes several Free Exercise Clause arguments. Doc. 21 at 2–3; *see also* Doc. 13 at ¶¶ 97–117, 132–138 (raising similar issues). None of them demonstrate that she is entitled to preliminary injunctive

relief because although Baker discusses general Free Exercise princi-
ples, she does so at a superficial level and, importantly, does not explain
how the Kansas statutes or regulations violate those principles such
that they compel relief in her particular case. It is possible that there is
a viable claim lurking within this dispute, but its presence has not been
shown.

For example, she states that Kansas's scheme "make[s] the receipt
of free special education benefits – as well as the delivery of those ser-
vices at the parent's own expense – conditional on the abandonment
of religious identity." Doc. 21 at 6. It might, and may therefore impli-
cate the First Amendment. *Carson v. Makin*, 142 S. Ct. 1987, 2000
(2022) (noting that a state cannot "exclude[ ] religious observers from
otherwise available public benefits"). But Baker does not elaborate or
explain how it does so. *Schrier*, 427 F.3d at 1266 (affirming a district
court's decision to deny a preliminary injunction because the plaintiff
"failed to meet his burden of demonstrating a substantial likelihood of
success on his First Amendment claims").

Likewise, Baker asserts that the challenged statute and regulations
"effectively disqualify[] both parents and the[] homeschools solely be-
cause they are religious." Doc. 21 at 6 (quotation marks and citation
omitted). As before, that might be true—and if it is, the challenged
statute and regulations would present a Free Exercise issue to be ad-
dressed. *Carson*, 142 S. Ct. at 2000. But Baker does not explain how
Kansas law violates the First Amendment such that a preliminary in-
junction should issue. *Schrier*, 427 F.3d at 1266. Her arguments in sup-
port of her claims are sparse and do not engage with the text of the
challenged provisions in a way that establishes a likelihood of success
on the merits.

Two such provisions are at issue. K.S.A. § 72-3463 states that "[n]o
special education services shall be provided in connection with reli-
gious courses, devotional exercises, religious training, or any other re-
ligious activity." And K.A.R. 91-40-48(c)(2) instructs that "[e]ach
agency shall ensure that special education and related services provided
to exceptional children enrolled in private schools are provided in a
secular and nonideological manner. Baker says that K.A.R. 91-40-48
and Section 72-3463 together mean that no IEP services whatsoever
can be provided in any religious setting—such as Baker's home-
school—and that this violates the First Amendment. In other words,
she claims that she cannot access a benefit that would be available if
she were not religious. Defendants respond that K.A.R. 91-40-48(c)(2)

means the same unobjectionable thing as Section 72-3463: State employees cannot themselves provide religious instruction.

Baker's view is not clearly correct. Kansas is generally free to tell its employees how to perform their jobs. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. ---, 142 S. Ct. 2407, 2423 (2022) (noting that "government employees [are] paid in part to speak on the government's behalf and convey its intended messages"); *see also Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). So the regulation, at least on its face, does not appear inconsistent with the First Amendment. Baker merely asserts without explaining that the regulation is facially inconsistent with the First Amendment.

Any such explanation would have to show that Section 72-3463 likely violates the nondiscrimination principle described in *Carson*. 142 S. Ct. 1987. Baker cannot do so because, among other things, that section has been interpreted in such a way as to reject many of Baker's discrimination arguments. *Baker v. Blue Valley Sch. Bd.*, 543 P.3d 1179 (Kan. Ct. App. 2024) (table). "[Section 72-3463] only prohibits *public schools* from providing religiously oriented special education services— not parents or private schools." *Baker*, 543 P.3d 1179 (emphasis in original). The Kansas Court of Appeals decision went further, explaining that "[i]f a parent pursues the private option, they may combine special education services with religious practice." *Id.* Of course, the *Baker* decision is not controlling, so a federal court must still "attempt to predict what the state's highest court would do." *United States v. De-Gasso*, 369 F.3d 1139, 1145 (10th Cir. 2004). But that prediction is informed by the *Baker* decision. After all, "[i]t is axiomatic that state courts are the final arbiters of state law." *Id.* And neither *Baker* nor the challenged sections suggest that Baker's interpretations of state law are so clearly correct that preliminary relief is warranted.

Other parts of Baker's argument are opaque, and do not make her likely to succeed on the merits. For example, she intermittently argues that "[n]othing in the Disabilities Education Act ("IDEA") … require[s] that special education services be provided in a 'secular and nonideological manner.'" Doc. 21 at 1 (citing K.A.R. 91-40-48(c)(2)). But IDEA states that "[s]pecial education and related services provided to parentally placed private school children with disabilities, including materials and equipment, shall be secular, neutral, and nonideological," 20 U.S.C. 1412(a)(10)(A)(vi)(II). Plainly, then, something in IDEA "require[s] that special education services be provided in a secular and nonideological manner." Doc. 21 at 1. While Baker stresses that she

does not challenge IDEA's version of this requirement, she challenges Kansas's substantially similar version.[8] Doc. 21 at 1; Doc. 25 at 10; Doc. 33 at 5. A synthesis of this apparent contradiction is critical to her success on the merits but does not appear in her pleadings, at least not in a discernable way.[9] *See* Doc. 33 at 4 (discussing IDEA in the context of Section 72-3463).

### D

Count VII in Baker's complaint is an appeal. *See* 20 U.S.C. § 1415(i)(2)(A) (permitting a party aggrieved at the state level to sue in federal court); Kan. Stat. Ann. § 72-3418(c) (same); *Patrick G. by & through Stephanie G. v. Harrison Sch. Dist. No. 2*, 40 F.4th 1186, 1191 (10th Cir. 2022) (explaining how IDEA permits an appeal to federal court); *Beer v. USD 512 Shawnee Mission*, No. 21-2365, 2023 WL 2562416, at *33 (D. Kan. Mar. 17, 2023) (noting that the "appeal and review process allows parties to appeal [a] decision to a review officer and, then, to appeal that review officer's decision to the court"). Baker's appeal arises from a special education due process complaint that Baker previously filed with the Kansas Office of Administrative Hearings. Doc. 13 at ¶ 159. A hearing officer dismissed Baker's complaint. *Id.* at ¶ 162. She requests that his decision be reversed. *Id.* at ¶ 189. Count VII is now at issue because Schmidt moves for judgment on the administrative record. Doc. 65; *see also L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004) (reviewing the decision of a district court that granted "a judgment on the administrative agency's record" under IDEA and noting that summary dispositions under IDEA are often best described as judgments on the record). For the following reasons, his motion is granted, and the hearing officer's decision is affirmed.

---

[8] Neither this argument nor Baker's ancillary arguments related to federal law require notifying the United State Attorney General. *Contra* Doc. 32 at 2–3. The implied challenge is not enough. "The validity of a statute is not drawn in question every time rights claimed under such statute are controverted." *Marquez v. KBMS Hosp. Corp.*, 492 F. Supp. 3d 1058, 1066 (C.D. Cal. 2020) (citing *United States v. Lynch*, 137 U.S. 280, 285 (1890)). Rather, a plaintiff must deny the "constitutionality, or legality of such statute" and "the denial [must] form[] the subject of direct inquiry." *Id.* That is not the case here, so Baker need not alert the Attorney General.

[9] Baker makes several other arguments in support of her motion, Doc. 21 at 10–11, but she lacks standing to assert them, *see* Section II.C.1, *supra*.

**1.** Before addressing the substance of the appeal and the parties' respective arguments, it is helpful to understand the context in which this dispute has arisen. To qualify for IDEA funding, states must give children with disabilities a free and appropriate public education. 20 U.S.C. § 1412(a)(1)(A). IDEA "relies on specific federal and state regulations for implementation" of this requirement. *D.T. by & through Yasiris T. v. Cherry Creek Sch. Dist. No. 5*, 55 F.4th 1268, 1273 (10th Cir. 2022). Disputes may arise between parents and schools about schools' efforts to provide a free appropriate public education. These disputes are subject to state-based administrative review. *See* 20 U.S.C. § 1415(f). That review includes, most formally, "an impartial due process hearing." *Patrick G. by & through Stephanie G. v. Harrison Sch. Dist. No. 2*, 40 F.4th 1186, 1191 (10th Cir. 2022) (citation omitted).

Some complainants never receive a hearing. If a complaint is inadequate, a hearing officer may reject it on its face. Most complaints do not fail this way, because both IDEA and Kansas law presume that complaints are adequate. Kan. Stat. Ann. § 72-3415(b)(2); 20 U.S.C. § 1415(c)(2)(A). Still, a defendant can overcome that presumption by "notif[ying] the hearing officer and the other party … that the receiving party believes the [complaint] does not meet the requirements" of Section 72-3415(a)(1). And if the complaint is inadequate, then the complainant "shall not be entitled to a due process hearing." *See* Kan. Stat. Ann. § 72-3415(a)(1).

After a person files a complaint—adequate or otherwise—the parties must meet "to discuss the due process complaint[] and the facts that form the basis of the … complaint." 34 C.F.R. 300.510(a)(2). The parties can waive this meeting, 34 C.F.R. 300.510(a)(3); K.S.A. 72-3416(a)(5), and did so here, Doc. 78-1.

A hearing officer may then render a decision under several of IDEA's subsections. *See* 20 U.S.C. § 1415(i)(1). An aggrieved party can appeal these decisions within Kansas's system. Kan. Stat. Ann. § 72-3418(b)(1). If they are still unsatisfied with that state appeals process, they can appeal again to a federal court. 20 U.S.C. § 1415(i)(2)(A); Kan. Stat. Ann. § 72-3418(c).

Federal courts review state administrative decisions under IDEA using a modified de novo standard. *Garcia v. Bd. of Educ. of Albuquerque Pub. Sch.*, 520 F.3d 1116, 1125 (10th Cir. 2008). Under this standard, a district court must receive the records of the administrative proceedings, hear additional evidence upon request, and base its decision on

the preponderance of evidence. 20 U.S.C. § 1415(i)(2)(C); *see also Cherry Creek*, 55 F.4th at 1273. Much of this evidence will have been reviewed by the agency below. *See Garcia*, 520 F.3d at 1125. And agency factfinding is presumed correct. *Id.*

**2.** Baker's case resists ordinary review because the merits of her dispute were not decided. Instead, both Baker's hearing officer and an ALJ found her complaint impermissibly vague—referencing "random unexplained emails," and "unrelated vague allegations"—and rejected it on that basis. Doc. 66-5 at 2 (stating that the decision "does not rule on any issue other than the sufficiency"); Doc. 66-7 at 4 (referencing a parent's obligation to file an adequate complaint); *see also* 20 U.S.C. § 1415(c)(2)(D) (setting forth IDEA's version of complaint sufficiency requirements). Their determinations do not support federal court jurisdiction because an aggrieved party can only appeal the results of a hearing, and a party with an insufficient complaint does not receive a hearing.

Jurisdiction under IDEA is limited. It allows parties to seek review in federal court only when they are aggrieved by decisions and findings under subsections (f), (k), (g), and (i). *See* 20 U.S.C. § 1415(i)(2)(A). Baker does not dispute any such decision or finding. Instead, she contests a determination made under Subsection (c), which governs insufficient complaints. *Id.* at § 1415(c)(2)(A), (D); *see also* Kan. Stat. Ann. § 72-3415(b)(3) (implementing this portion of IDEA).

A decision under Subsection (c) means that a claimant never receives a hearing, and thus never receives findings or a decision. Without findings or a decision, a claimant has nothing to appeal—and a court has nothing to review. *See A.F. ex rel Christine B. v. Espanola Pub. Sch.*, 801 F.3d 1245, 1246 (10th Cir. 2015) (explaining that a parent and student may bring a civil action in federal court if they are aggrieved by a hearing and their subsequent appeals). Courts in other jurisdictions to confront this issue have reached similar conclusions. *See, e.g., Knight v. Washington Sch. Dist.*, No. 09-CV-00566, 2010 WL 1909581, at *4 (E.D. Mo. May 10, 2010), *aff'd*, 416 F. App'x 594 (8th Cir. 2011); *Marlboro Twp. Bd. of Educ. v. H.L.*, No. 18-CV-12053, 2019 WL 1877394, at *3 (D.N.J. Apr. 26, 2019), *aff'd sub nom. Twp. of Marlboro Bd. of Educ. v. H.L.*, 793 F. App'x 101 (3d Cir. 2019) (noting that without a due process hearing, "the triggering event providing the Court jurisdiction to hear an appeal … has not occurred"); *Jackson Twp. Bd. of Educ. v. D.B. o/b/o Y.B.*, No. 23-CV-3568, 2023 WL 6690473, at *4 (D.N.J. Oct. 12, 2023); *G.R. ex rel. Russell v. Dallas Sch. Dist. No. 2*, No.

**Blue Valley Addendum-23**

10-CV-232, 2010 WL 5232958, at *8 (D. Or. Dec. 15, 2010); *Fernandez v. Elk Grove Unified Sch. Dist.*, No. 19-CV-00082, 2020 WL 1532229, at *4 (E.D. Cal. Mar. 31, 2020); *H.T. v. Hopewell Valley Reg'l Bd. of Educ.*, No. 14-1308, 2015 WL 4915652, at *7 (D.N.J. Aug. 18, 2015); *Jackson Twp. Bd. of Educ. v. S.G. on behalf of A.G.*, No. CV 16-0336, 2017 WL 1065819, at *4 (D.N.J. Mar. 21, 2017); *I.K. o/b/o Z.S. v. Montclair Bd. of Educ.*, No. 16-CV-9152, 2018 WL 2441761, at *5 (D.N.J. May 31, 2018) (concluding that sufficiency decisions are not appealable, but noting that "the appealability of a sufficiency decision is an open question"); *but see M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1090 n.12 (9th Cir. 2012) (hinting, in dicta, that "[i]f the ALJ completely dismisses the matter, the dismissal is final and judicially reviewable"). Because Baker cannot bring her claim in federal court, Schmidt's motion for judgment on the administrative record as to Count VII, Doc. 65, is granted.

## III

For the foregoing reasons, Watson's Motion to Dismiss, Doc. 23, is GRANTED. Schmidt's Motion for Judgment on the Administrative Record on Count VII, Doc. 65, is GRANTED. Baker's Motion for a Preliminary Injunction, Doc. 21, is DENIED. Her Motion to Supplement, Doc. 104, is GRANTED. Her Motion for Summary Judgment, Doc. 106, is DENIED as moot.

It is so ordered.

Date: June 25, 2024                    s/ Toby Crouse
                                       Toby Crouse
                                       United States District Judge

23